BEVAN v BRANDON TOWNSHIP

Docket No. 86358. Argued March 6, 1991 (Calendar No. 2). Decided
    September 9, 1991. Amended 439 Mich 1202. Certiorari denied
    by the Supreme Court of the United States on January 21,
    1992, 502 US — (1992).

    William and Wava Bevan, owners of two adjoining parcels of
    property in Brandon Township, accessible only by way of a
    narrow easement over a neighbor's land, brought an action in
    the Oakland Circuit Court against the township, challenging a
    zoning ordinance restricting the number of houses that may be
    built on their property because of the nonconforming private
    access road. Relief was sought on stipulated facts under US
    Const, Ams V and XIV, Const 1963, art 1, § 17 and art 10, § 2,
    and 42 USC 1983. The court, James S. Thorburn, J., declared
    that the ordinance, as applied, amounted to a temporary taking
    and enjoined its enforcement. The Court of Appeals, SHEPHERD,
    P.J., and MURPHY and T. GILLESPIE, JJ., affirmed (Docket No.
    103711). The township appeals.

    In an opinion by Justice GRIFFIN, joined by Justices LEVIN,
    BRICKLEY, RILEY, and MALLETT, the Supreme Court held:

    The township's regulation, as applied to the plaintiffs' prop-
    erty, does not amount to a regulatory taking without just
    compensation.

    1. Government taking of private property without just com-
    pensation is prohibited by US Const, Am V and Const 1963, art
    10, § 2. Zoning regulations may amount to a taking if, as
    applied, they go too far in impairing a property owner's use of
    land. Generally, however, where a regulation promotes the
    health, safety, morals, or general welfare, it has been upheld
    even though it may adversely affect recognized property inter-
    ests.

    2. The property in question in this case, although comprised
    of two separate contiguous parcels, is to be considered as a
    whole for purposes of taking analysis. Its separate tax numbers

REFERENCES
Am Jur 2d, Zoning and Planning §§ 13, 25, 27, 28.
See the Index to Annotations under Eminent Domain; Zoning.

and deeds are not controlling in determining whether enforcement of the ordinance would amount to a taking.

3. A zoning ordinance is presumed valid, and the burden of showing that there is no real or substantial relation to public health, morals, safety, or general welfare is on the challenger. In this case, the ordinance, on its face, is a legitimate exercise of the township's police power, providing for the safety of its citizens. The plaintiffs offered no competent evidence to overcome the presumption, to establish a vested nonconforming use, or to demonstrate a denial of the economically viable use of their property.

Chief Justice CAVANAGH and Justice BOYLE concurred in the result only.

Reversed.

176 Mich App 452; 440 NW2d 31 (1989) reversed.

1. ZONING — TAKING — CONTIGUOUS PARCELS.

For purposes of taking analysis, contiguous parcels of land generally will be considered as a whole; artificial devices such as separate deeds and tax identification numbers are not controlling in determining whether enforcement of a zoning ordinance would amount to a taking (US Const, Am V; Const 1963, art 10, § 2).

2. ZONING — ORDINANCES — PRESUMPTION OF VALIDITY — BURDEN OF PROOF.

A zoning ordinance is presumed valid, and the burden of showing by competent evidence that there is no real or substantial relation to public health, morals, safety, or general welfare is on the challenger.

*Thomas J. Ryan, P.C.,* for the plaintiffs.

*Campbell, Keenan, Harry & Cooney* (by *Richard A. Campbell* and *Stuart B. Cooney*) for the defendants.

Amici Curiae:

*Bauckham, Sparks, Rolfe & Thomsen, P.C.* (by *John H. Bauckham* and *Lynda E. Thomsen*), for Michigan Townships Association.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton*

(by *Gerald A. Fisher*) for Michigan Municipal
League, City of Auburn Hills, City of Bloomfield
Hills, Bloomfield Township, City of Farmington,
City of Farmington Hills, Independence Charter
Township, Oakland Charter Township, and West
Bloomfield Charter Township.

Griffin, J. We must decide whether enforce-
ment of a township ordinance which restricts the
use of plaintiffs' land amounts in this case to an
unconstitutional "taking" without just compensa-
tion. Plaintiffs own approximately six acres of
undeveloped land which does not front on a public
road. Their predecessor in title had divided the
parcel into two contiguous lots, each with its own
tax description, and the lots were sold separately
to plaintiffs. The only access to plaintiffs' property
is an easement 20 feet wide and 290 feet long
across a neighbor's land. Under township land-use
ordinances adopted after plaintiffs acquired title,
the land is zoned for single family homes, and one
house may be built on the property. Plaintiffs are
restricted from building two or more houses on the
property unless access is made available over a
road with a right of way width of at least sixty-six
feet.

Because the access regulation in question serves
a legitimate governmental interest and does not
deny the owners economically viable use of their
land, we conclude that enforcement does not effect
an unconstitutional taking of plaintiffs' property.
Accordingly, we reverse the decision of the Court
of Appeals.

I

In the circuit court, the parties waived a trial
and submitted the case for decision upon stipu-

lated facts. A copy of the statement of stipulated facts, which was signed by the parties and accepted by the circuit judge, is appended to this opinion.

It is undisputed that the easement providing the only access to plaintiffs' property does not meet the minimum width requirement of the township ordinance applicable to a private road which serves two or more homes.[1] After their application for permits to build two houses on the property was rejected, plaintiffs sought a variance, or waiver of the requirement; however, it was denied on August 28, 1985, by the board of zoning appeals. Thereafter, in December 1986, plaintiffs commenced this lawsuit and complained that, as applied, the township's zoning scheme, and particularly the private road ordinance, denied them use of one lot in violation of the Fifth and Fourteenth Amendments of the United States Constitution as well as art 1, § 17 and art 10, § 2 of the Michigan Constitution. Plaintiffs sought relief under 42 USC 1983, and they asked for a declaratory judgment holding the road ordinance unconstitutional.

In a brief written opinion, the circuit judge ruled that application of the road ordinance to plaintiffs' property "constitutes a regulatory taking and is confiscatory." After pointing out that

---

[1] Brandon Township Ordinance No. 42, adopted in 1977, includes the following definition of a private road:

§ 2.5. PRIVATE ROAD. Private road shall mean a privately owned and maintained road, allowing access to more than one residence or place of business, which is normally open to the public and upon which persons other than the owners located thereon may also travel. The erection of such signs as, "Residents Only," or the like shall not be deemed to remove any roadway from the requirements of this Ordinance . . . .

Section 7.1 of the same ordinance requires that the right of way for such a private road "shall be a minimum of sixty-six (66) feet in width."

plaintiffs had sought no compensation for a temporary taking, the court enjoined enforcement of the ordinance and awarded plaintiffs an attorney fee of $5,300.[2]

On appeal to the Court of Appeals, the decision of the lower court was affirmed. 176 Mich App 452; 440 NW2d 31 (1989). Reasoning that plaintiffs' property is "unquestionably two separate parcels," and that plaintiffs' easement "would be wide enough to accommodate emergency equipment," the panel concluded that the road ordinance "as applied to [plaintiffs'] property precludes its use for any purpose to which it is reasonably adapted" and "constitutes a regulatory taking of one of plaintiffs' two parcels." *Id.* at 464, 465.

Thereafter, we granted leave to appeal. 436 Mich 881 (1990).

II

Both the Fifth Amendment of the United States Constitution[3] and art 10, § 2 of the Michigan Constitution[4] prohibit governmental taking of private

---

[2] The judge cited 42 USC 1988, which provides that reasonable attorney fees may be awarded to the prevailing party in a 42 USC 1983 action. The amount of the fee was in accord with the stipulation of the parties.

[3] US Const, Am V, provides in part:

> No person shall . . . be deprived of . . . property, without due process of law; nor shall private property be taken for public use without just compensation.

The Fifth Amendment is applied to the states through the Fourteenth Amendment. See, *e.g.*, *Penn Central Transportation Co v New York City*, 438 US 104; 98 S Ct 2646; 57 L Ed 2d 631 (1978).

[4] Const 1963, art 10, § 2 provides in part:

> Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law. Compensation shall be determined in proceedings in a court of record.

property without just compensation. In *Armstrong v United States,* 364 US 40, 49; 80 S Ct 1563; 4 L Ed 2d 1554 (1960), the United States Supreme Court stated that the

> Fifth Amendment's guarantee . . . [is] designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.

As this Court has explained, speaking through Chief Justice RILEY in *Electro-Tech, Inc v H F Campbell Co,* 433 Mich 57, 68; 445 NW2d 61 (1989),

> a taking may occur where a governmental entity exercises its power of eminent domain through formal condemnation proceedings, see, e.g., *Berman v Parker,* 348 US 26; 75 S Ct 98; 99 L Ed 27 (1954) (Fifth Amendment taking), or where a governmental entity exercises its police power through regulation which restricts the use of property, see *Pennsylvania Coal Co v Mahon,* 260 US 393, 415; 43 S Ct 158; 67 L Ed 322 (1922) (this claim may be framed as a Fifth Amendment taking or as a Fourteenth Amendment "due process" type taking).

Zoning laws are a classic example of regulation that may amount to a "taking," if application "goes too far" in impairing a property owner's use of his land. *Pennsylvania Coal Co, supra* at 415. Generally speaking, however, zoning regulation has been upheld where it promotes the health, safety, morals, or general welfare even though the regulation may adversely affect recognized property interests.[5] As the United States Supreme

---

[5] See, e.g., *Agins v Tiburon,* 447 US 255; 100 S Ct 2138; 65 L Ed 2d 106 (1980); *Penn Central,* n 3 *supra; Nectow v Cambridge,* 277 US

Court has explained, "Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law." *Id.* at 413.

The Supreme Court has declared that "land-use regulation does not effect a taking if it 'substantially advance[s] legitimate state interests' and does not 'den[y] an owner economically viable use of his land.'" *Nollan v California Coastal Comm,* 483 US 825, 834; 107 S Ct 3141; 97 L Ed 2d 677 (1987), citing *Agins v Tiburon,* 447 US 255; 100 S Ct 2138; 65 L Ed 2d 106 (1980). Although the Supreme Court has provided little guidance regarding what it considers a legitimate state interest and the type of connection required between that interest and the regulation, *Nollan, supra,* it has made clear that the question whether a regulation denies the owner economically viable use of his land requires at least a comparison of the value removed with the value that remains. *Keystone Bituminous Coal Ass'n v DeBenedictis,* 480 US 470, 497; 107 S Ct 1232; 94 L Ed 2d 472 (1987).

As previously noted, a taking claim may be framed as a violation of the Just Compensation Clause of the Fifth Amendment or the Due Process Clause of the Fourteenth Amendment. Alternatively, as Justice BRICKLEY, dissenting, explained in *Electro-Tech, supra* at 94, a claim may be based on a denial of substantive due process where a plaintiff is deprived of property rights "by irrational or arbitrary governmental action."[6]

_____

183; 48 S Ct 447; 72 L Ed 842 (1928); *Village of Euclid v Ambler Realty Co,* 272 US 365, 395; 47 S Ct 114; 71 L Ed 303 (1926); *Gackler Land Co, Inc v Yankee Springs Twp,* 427 Mich 562; 398 NW2d 393 (1986); *Kirk v Tyrone Twp,* 398 Mich 429, 433; 247 NW2d 848 (1976); *Kropf v Sterling Heights,* 391 Mich 139, 158; 215 NW2d 179 (1974).

[6] Under this approach, it must be shown that a regulation is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Village of Euclid v Ambler Realty Co,* n 5 *supra* at 395.

We note, preliminarily, that this case was not presented and argued in the courts below as a substantive due process claim;[7] the rulings of the courts below focus only on plaintiffs' claim of a regulatory taking. In any event, we note the absence of record evidence to support a contention that enactment or enforcement of the ordinance in this case was a "deliberate and arbitrary abuse of power" aimed at these particular plaintiffs. Consequently, our review focuses on the question whether the lower courts erred in ruling that application of the challenged ordinance amounted to a "taking" without just compensation of plaintiffs' property.[8]

As Justice BRICKLEY explained in *Electro-Tech* at 94-95,

> In contrast to regulatory taking due process claims, . . . [a] substantive due process claim, . . . "does not require proof that all use of the property has been denied. . . ." Rather, "the deliberate and arbitrary abuse of government power violates an individual's right to substantive due process." [Citations omitted. See also *id.* at 76, n 21.]

[7] It is not enough to note that [the petitioners] rely on the Due Process Clause of the Fourteenth Amendment, for that Clause is the source of three different kinds of constitutional protection. First, it incorporates specific protections defined in the Bill of Rights. . . . Second, it contains a substantive component, sometimes referred to as "substantive due process," which bars certain arbitrary government actions "regardless of the fairness of the procedures used to implement them." . . . Third, it is a guarantee of fair procedure, sometimes referred to as "procedural due process": the State may not execute, imprison, or fine a defendant without giving him a fair trial, nor may it take property without providing appropriate procedural safeguards. [*Daniels v Williams*, 474 US 327, 337; 106 S Ct 662; 88 L Ed 2d 662 (1986) (Stevens, J., concurring).]

[8] We do not overlook that plaintiffs' § 1983 claim falls short of compliance with finality (ripeness) requirements laid down in *Williamson Co Regional Planning Comm v Hamilton Bank of Johnson City*, 473 US 172; 105 S Ct 3108; 87 L Ed 2d 126 (1985), and applied by this Court in *Electro-Tech, supra*. In addition to requiring that the "initial decisionmaker [arrive] at a definitive position on the issue that inflicts an actual, concrete injury," 473 US 193, the *Williamson* Court declared that

However, before reaching that question, we must consider a subissue: whether for purposes of a "taking" analysis the property of plaintiffs is to be viewed as a whole, or as two separate lots.

III

Noting that the two lots were purchased at different times and that each lot carried its own tax identification number, the Court of Appeals viewed the property as "unquestionably two separate parcels." 176 Mich App 464. The panel reasoned that one of the two lots had been "taken," since plaintiffs were permitted to build only one house on their land.

As a general rule, a person's property should be considered as a whole when deciding whether a regulatory taking has occurred. 1 Rathkopf, Zoning and Planning, § 6.07(5), p 6-45.

Since for purposes of a taking analysis it is necessary to compare the value "taken" with the value that remains, "one of the critical questions is determining how to define the unit of property 'whose value is to furnish the denominator of the fraction.' " *Keystone, supra* at 497.

Specification of the appropriate unit of property

---

if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause *until it has used the procedure and been denied just compensation.* [*Id.* at 195. Emphasis added.]

In this case, after plaintiffs' request for a variance was denied by the township's board of zoning appeals, plaintiffs had taken no action for sixteen months when they filed this lawsuit. Although plaintiffs have included a state inverse condemnation claim in this action, obviously, it cannot be said that they "used the [state] procedure and [had] been denied just compensation." Accordingly, consistent with *Electro-Tech,* plaintiffs' § 1983 claim was not ripe for adjudication. Of course, this point is not dispositive since plaintiffs also claim violation of the state constitution.

under consideration was at the heart of two signifi-
cant United States Supreme Court decisions deal-
ing with the issue of regulatory taking. *Keystone,
supra*; and *Penn Central Transportation Co v New
York City,* 438 US 104; 98 S Ct 2646; 57 L Ed 2d
631 (1978). Contrary to the position taken in this
case by the Court of Appeals, the Supreme Court
has declined to view an owner's property as divisi-
ble for purposes of a "taking" analysis. In *Penn
Central,* owners of the New York City's Grand
Central Terminal challenged application of the
city's Landmarks Preservation Law which pre-
vented them from constructing a multistory office
building atop an existing structure. Rejecting the
owners' argument that the law deprived them of
any gainful use of the air space above the termi-
nal, and that regardless of the value of the re-
mainder of the property, the city had "taken" the
air space thereby requiring just compensation, the
Court observed:

> [T]he submission that appellants may establish a
> "taking" simply by showing that they have been
> denied the ability to exploit a property interest
> that they heretofore had believed was available for
> development is quite simply untenable. . . . *"Tak-
> ing" jurisprudence does not divide a single parcel
> into discrete segments and attempt to determine
> whether rights in a particular segment have been
> entirely abrogated.* In deciding whether a particu-
> lar governmental action has effected a taking, this
> Court focuses rather both on the character of the
> action and on the nature and extent of the inter-
> ference with rights in the *parcel as a whole* . . . .
> [438 US 130-131.[9] Emphasis added.]

[9] See also *Multnomah Co v Howell,* 9 Or App 374, 379-380; 496 P2d
235 (1972) ("The reasonableness of a zoning ordinance must be tested
by its effect on the whole of [the landowner's] contiguous property,
not simply the effect on a portion thereof").

Cf. *American Savings & Loan Ass'n v Marin Co,* 653 F2d 364 (CA 9,

Additional guidance was provided in *Keystone Coal Ass'n, supra,* where the Court explained that " 'where an owner possesses a full "bundle" of property rights, the destruction of one "strand" of the bundle is not a taking because the aggregate must be viewed in its entirety.' " 480 US 497. Writing for the Court, Justice Stevens explained:

> Many zoning ordinances place limits on the property owner's right to make profitable use of some segments of his property. A requirement that a building occupy no more than a specified percentage of the lot on which it is located could be characterized as a taking of the vacant area as readily as the requirement that coal pillars be left in place. . . . There is no basis for treating the less than 2% of petitioners' coal as a separate parcel of property. [480 US 498.]

According to the Court, the "taking" analysis does not turn on the state's recognition of a separate estate within the owner's property, or whether state law allows the separate sale of a segment of the property. *Id.* at 500. "It is clear," wrote Justice Stevens, "that our takings jurisprudence forecloses reliance on such legalistic distinctions within a bundle of property rights." *Id.*

This Court has recognized that contiguous lots under the same ownership are to be considered as a whole for purposes of judging the reasonableness of zoning ordinances, despite the owner's division of the property into separate, identifiable lots. In *Korby v Redford Twp,* 348 Mich 193; 82 NW2d 441

1981), where the court held that contiguity of lots under the same ownership does not automatically create a single parcel for taking purposes. In that case, the plaintiff's property was covered by two different zoning designations which could divide it into discrete segments. The court suggested that the "whole parcel" approach enunciated in *Penn Central* is limited to cases where all of the property is subject to the challenged zoning ordinance, as it is here.

(1957), the owners of numerous contiguous lots sought to enjoin enforcement of a township zoning ordinance restricting use of the property to single-family residences. The owners contended, inter alia, that the ordinance was unreasonable because their lots were platted twenty feet in width, and as such, were not wide enough for single-family residences. This Court ruled that division of the property,

> is not a fact or circumstance which affects or detracts from the reasonableness of the classification. If it were held to be so, the result would be that it would be competent for landowners to perpetually defeat future zoning restrictions by crisscrossing their lands on a plat map with lines ostensibly dividing the same into parcels so small that each would be unsuited to any foreseeable use unless combined with others. *The test of reasonableness may not be distorted or thwarted by any such artificial device.* [348 Mich 198.[10] Emphasis added.]

In the case before us, it is noteworthy that the separate tax numbers and deeds identifying the parcel as two lots were sought by the plaintiffs'

___

[10] It is also observed that when the government directly condemns a portion of a parcel of land for public use, the owner often seeks just compensation on the basis of diminution of value to his remaining land. In this regard, property owners often assert that their remaining land, even if physically separated from the portion taken, should be considered as one parcel. While the owner is not entitled to recover for damage to separate and independent parcels of land which he may happen to own in the same neighborhood, a parcel of land is not considered separate and independent merely because it was bought at a different time and separated by an imaginary line, or even that the parcels are separated by a highway, street, or alley. 27 Am Jur 2d, Eminent Domain, § 315, pp 134-135. Nor does the fact that vacant, undeveloped land is "made up of a number of government subdivisions or sections . . . alone prevent its being treated as an entirety in the award of damages for a taking of part of it." *Id.,* § 317, p 139.

predecessor in interest. Whether Michigan law allows a property owner to divide his land into separate parcels is not controlling for purposes of a taking analysis. *Keystone Coal, supra.* "Artificial device[s]," such as tax identification numbers and separate deeds—analogous to the plat lines in *Korby*—are not controlling in determining whether enforcement of the ordinance in this case would amount to a taking.[11]

Accordingly, we decline to apply a taking analysis only to one of plaintiffs' lots and thereby "attempt to determine whether rights in a particular segment have been entirely abrogated." *Penn Central, supra* at 130. Instead, we conclude that plaintiffs' land, and the full bundle of property rights associated with it, must be viewed in its entirety.

IV

We turn now to the question whether enforcement of the township's ordinance amounts to an unconstitutional regulatory taking. As already indicated, that inquiry requires us to consider whether the challenged ordinance substantially advances a legitimate governmental interest and, if so, whether it denies the owners economically

---

[11] A zoning ordinance which requires the merger of contiguous substandard lots for development purposes may be found unconstitutional if it results in unlawful spot zoning. See *SBS Builders v Madison Heights,* 389 Mich 323; 206 NW2d 437 (1973), where this Court struck down an ordinance necessitating the merger which applied only to a minute portion of the city, and where it appeared that the plaintiffs "may well be" the only persons affected by the ordinance.

In this case, the property in question consists of two contiguous lots under the same ownership and subject to a single zoning scheme. No evidence of "spot zoning" has been produced to show that plaintiffs' particular property has been, in effect, singled out and treated differently from all other property to accomplish a purpose that is being ignored elsewhere in the township.

viable use of their land. *Nollan, supra,* 483 US 825.[12]

### A

While all of the legitimate state interests that may justify zoning have not been identified, the United States Supreme Court has indicated "that a broad range of governmental purposes and regulations satisfies these requirements." *Nollan v California Coastal Comm, supra* at 834-835.

Meanwhile, the approach of this Court in passing on constitutional challenges to zoning ordinances has been well established. First of all, the validity of the ordinance is presumed. *Kropf v Sterling Heights,* 391 Mich 139; 215 NW2d 179 (1974).[13] As we explained in *Austin v Older,* 283 Mich 667, 674; 278 NW 727 (1938):

> It is elementary that every intendment is in favor of the constitutionality of an ordinance and *plaintiff has the burden of showing that it has no real or substantial relation to public health, morals, safety or general welfare.* Zoning ordinances are constitutional in principle as a valid exercise of the police power. [Emphasis added.]

We elaborated on the plaintiff's burden in *Kropf, supra,* where it was stated that a zoning ordinance is presumptively valid " 'unless the constitutional objections thereto are supported by *competent evidence* or appear on their face.' " 391 Mich 156. (Emphasis added.)

Brandon Township's purpose in enacting the private road ordinance and applying it to plain-

---

[12] It is significant that in this case the challenged regulation does not require the property owner to transfer land to the government without compensation. See *Nollan v California Coastal Comm, supra.* Rather, the ordinance regulates the scope of development on property with limited access.

[13] See also *Kirk v Tyrone,* n 5 *supra.*

tiffs' property is found in the preamble of that ordinance:

> It is recognized that such standards are necessary because of the need for road services adequate to provide year around access by fire, police, and like emergency vehicles. It is further recognized that if roads are not constructed in accordance with certain minimum standards, such roads frequently become impassable . . . and otherwise pose a threat to the health, safety and welfare of the residents located along the roadway, as well as those other residents who would find use of the roadway essential. [Ordinance No. 42.]

In support of the validity of the ordinance, the township attorney explained the relation between the ordinance and the governmental purpose.

> Your Honor, the Township in this kind of situation is between a rock and a hard place.
>
> We're charged with the maintenance and the welfare of our citizens. We've decided based on our experience with private roads that we have to be sure the people have passable access to the property where fire equipment can get in, emergency equipment can get in.
>
> This is a lake front parcel. The first time that a piece of emergency equipment can't get in there when there's a child drowning or there's a fire, the township will not only be criticized, they'll probably be sued.
>
>     *   *   *
>
> But when there's more than one dwelling involved, public interest becomes involved. And there's more than one dwelling involved in this situation . . . .

On its face, the township's zoning ordinance is a legitimate exercise of its police power to provide for the safety of its citizens by requiring that access to residential property be of a width which allows for the entry and exit of police cars, ambu-

lances and fire trucks.[14] The township legislatively determined that the public interest requires a wider access where it must serve, and be maintained by, two or more residences and is no longer under the sole control of one landowner.

On the other hand, the Court of Appeals made its own determination that the existing twenty-foot easement would be wide enough to accommodate emergency equipment for two single-family dwellings. 176 Mich App 464. In so concluding, the panel erred. Although *Kropf* requires it, plaintiffs provided no "competent evidence" to support such a determination. Certainly, a mere assertion by plaintiffs that the existing easement is wide enough to accommodate emergency vehicles does not, standing alone, overcome the presumption that the legislatively determined sixty-six foot access width requirement advances a legitimate governmental interest.[15]

Plaintiffs also complain that the ordinance was applied without consideration of circumstances surrounding the property before adoption of the ordinance—circumstances under which plaintiffs had a right to construct two residences on the property.[16] Essentially, plaintiffs claim a vested nonconforming use for their property.

---

[14] The state has given defendant the authority to enact zoning ordinances pertaining to roadway standards through the township rural zoning act. MCL 125.271; MSA 5.2963(1). See also *People v Sell*, 310 Mich 305, 315-316; 17 NW2d 193 (1945), for a detailed description of "police power."

[15] In a related argument, plaintiffs contend that the ordinance is unreasonable because it defines a private road as one "open to the public" and the use of plaintiffs' easement by the public will be minimal. However, we note that the operative language of the ordinance is whether access is provided to more than one residence, and the ordinance specifically states that a private road may be restricted in its use to residents only.

[16] These circumstances are distinguishable from those cases where a preëxisting zoning ordinance was challenged by a landowner who purchased property with knowledge of the restrictions and the Court denied relief. *Johnson v Robinson Twp*, 420 Mich 115; 359 NW2d 526

As we explained in *Gackler Land Co, Inc v Yankee Springs Twp,* 427 Mich 562, 573-574; 398 NW2d 393 (1986),

> "A prior nonconforming use is a vested right to continue the lawful use of real estate in the manner it was used prior to the adoption of a zoning ordinance." A zoning ordinance cannot operate to oust the property owner of his vested right even though the ordinance is reasonable. "An ordinance requiring immediate cessation of a nonconforming use may be held to be unconstitutional because it brings about a deprivation of property rights out of proportion to the public benefit obtained . . . ." [Citations omitted.]

In order for a nonconforming use of land to vest, actual construction on the site must have begun before the zoning regulation is adopted. Application of a zoning ordinance does not amount to a taking where the nonconforming use of the property "rests solely within the owner's contemplation." *Id.* at 578. In *Gackler,* we ruled that

> [t]o establish a nonconforming use, "there must be work of a 'substantial character' done by way of preparation for an actual use of the premises." The actual use which is nonconforming must be apparent and manifested by a tangible change in the land, as opposed to intended or contemplated by the property owner. In this regard, preliminary operations such as ordering plans, surveying the land, and the removal of old buildings are insufficient to establish a nonconforming use. *The test in each case is not whether a little or a lot has been spent in reliance upon the past zoning classifications, but, rather, "whether there has been any*

---

(1984); *Kropf, supra.* However, it does not follow that undeveloped land purchased when there was no regulation will be free thereafter from compliance with all later restrictions on land use.

*tangible change in the land itself by excavation
and construction.' "* [427 Mich 574-575. Citations
omitted, emphasis added.][17]

The township's private road ordinance was en-
acted in 1977, and plaintiffs did not apply for
building permits until 1985, eight years after the
ordinance became effective. A review of the record,
including the statement of stipulated facts, makes
clear that plaintiffs have not borne the burden of
showing that work of a "substantial nature" to-
ward construction of two residences had taken
place prior to adoption of the ordinance. Where
building permits have been applied for, but have
not been issued, vested rights are not acquired,
even though significant sums may have been ex-
pended by the applicant. *Franchise Realty Inter-
state Corp v Detroit,* 368 Mich 276; 118 NW2d 258
(1962). Accordingly, plaintiffs acquired no vested
right to develop the property free of the ordinance.

B

Whether a zoning ordinance deprives an owner
of economically viable use of his property requires
consideration of such factors as the economic effect
of the regulation and the extent of its interference
with reasonable investment-backed expectations.
*Keystone, supra* at 495.

The United States Supreme Court has ruled that
a mere diminution in property value which results

[17] See also *City of Lansing v Dawley,* 247 Mich 394; 225 NW 500
(1929); *Sandenburgh v Michigamme Oil Co,* 249 Mich 372; 228 NW
707 (1930); *Bloomfield Twp v Beardslee,* 349 Mich 296; 84 NW2d 537
(1957); *Franchise Realty Interstate Corp v Detroit,* 368 Mich 276; 118
NW2d 258 (1962); *Expert Steel Co v City of Clawson,* 368 Mich 619;
118 NW2d 815 (1962); *Detroit Edison Co v City of Wixom,* 382 Mich
673; 172 NW2d 382 (1969); *Dingeman Advertising, Inc v Algoma Twp,*
393 Mich 89; 223 NW2d 689 (1974); *Schubiner v West Bloomfield Twp,*
133 Mich App 490; 351 NW2d 214 (1984).

from regulation does not amount to a taking, *Penn Central, supra,* 438 US 131, and that a property owner must prove that the value of his land has been destroyed by the regulation or that he is precluded from using the land as zoned.[18]

This Court has stated:

> [A]n aggrieved property owner must show that if the ordinance is enforced the consequent restrictions on his property preclude its use for any purposes to which it is reasonably adapted. [*Kropf, supra,* 391 Mich 162-163.][19]

In the past, this Court has utilized two factors in determining whether zoning regulation effects a taking. The owner must show that the property is either unsuitable for use as zoned or unmarketable as zoned. *Kirk v Tyrone Twp,* 398 Mich 429, 444; 247 NW2d 848 (1976).[20] In *Kirk,* an owner whose land was zoned for single family dwellings sought, and was denied, rezoning to a classification that would permit development of a mobile home park. He complained of unconstitutional confiscation, asserting that the higher cost of developing his land for on-site homes precluded its use as zoned. The *Kirk* Court noted a lack of evidence that the land could not be developed with on-site homes or that no market for single-family residences existed. Finding that the zoning ordinance as applied did not effect a taking, this Court explained:

> Although there is no doubt the subject land's

[18] A comparison of values before and after a regulation becomes effective is relevant in determining whether the regulation is so onerous as to constitute a "taking," but is by no means conclusive. *Goldblatt v Hempstead,* 369 US 590; 82 S Ct 987; 8 L Ed 2d 130 (1962). See also *Keystone, supra,* 480 US 497.

[19] See also *Gackler v Yankee Springs Twp, supra.*

[20] *Spanich v Livonia,* 355 Mich 252; 94 NW2d 62 (1959); *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425; 86 NW2d 166 (1957).

value as a mobile home park exceeded its value as residential property, it still was worth a great deal as zoned. A showing of confiscation will not be justified by showing a disparity in value between uses. [*Id.* Citations omitted.]

In the present case, plaintiffs' property is zoned for single-family dwellings, but the ordinance under challenge limits the number of homes that may be built unless there is an access right of way that is sixty-six feet wide. It is significant for purposes of a taking analysis that plaintiffs are allowed, under the ordinance, to build one home on their property. Accordingly, plaintiffs have not demonstrated that the ordinance renders their property unsuitable for use as zoned. The ordinance therefore does not preclude plaintiffs' use of the property "for any purposes to which it is reasonably adapted." *Kropf, supra,* 391 Mich 163.

Nor has it been shown that plaintiffs' property would be unmarketable if it were developed with a single residence in accordance with the ordinance. Although the Court of Appeals concluded that "plaintiffs' attempts to sell the property have been unsuccessful," 176 Mich App 464, the record reflects only that one attempt to sell to the Department of Natural Resources was unsuccessful. No evidence was provided, and no factual findings were made, concerning the extent of the effort or methods used in attempting to sell the property. The record does not reflect the price at which the property was offered, or the value of comparable lands, or any other evidence that would justify a conclusion that the property as zoned is unmarketable. Although there may be a disparity between the value of the land with a single home as compared to two homes, there is no record evidence of the extent of that disparity. As we have

said, "A showing of confiscation will not be justified by showing a disparity in value between uses." *Kirk, supra* at 444; *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425, 433; 86 NW2d 166 (1957).

v

Quite simply, in this case plaintiffs have not borne the burden of proof in any respect with regard to their allegations that a regulatory taking has occurred. The presumption of validity attached to defendant's ordinance remains undisturbed and there has been no demonstration that plaintiffs have been denied the economically viable use of their property. See *Nollan, supra.*

Accordingly, we hold that the township's regulation, as applied to plaintiffs' property does not amount to a regulatory taking without just compensation, and the decision of the Court of Appeals is reversed.

LEVIN, BRICKLEY, RILEY, and MALLETT, JJ., concurred with GRIFFIN, J.

CAVANAGH, C.J., and BOYLE, J., concurred in the result only.

### APPENDIX

#### STATEMENT OF STIPULATED FACTS

Plaintiffs purchased this lakefront property in two parcels by separate land contracts on September 20, 1954, and June 11, 1964 and took title in 1964 and 1970. Thereafter, Wava Bevan, formerly Wava Warner, transferred title to herself and William Bevan, her husband.

Deeds creating the above transfers reserve an easement 20 feet wide from the nearest public highway to the parcel, and such deeds predate the

Zoning Ordinance and Private Road Ordinance, hereafter discussed.

The property does *not* have frontage on any public roadway. The only access is the easement.

In 1974, Brandon Township adopted its Zoning Ordinance. . . . Other than those street frontage requirements, the parcel, as divided, meets the Zoning Ordinance requirements for two (2) buildable sites.

In 1977, Brandon Township adopted a Private Road Ordinance. That ordinance is Brandon Township Ordinance No. 42 . . . .

At the time that Wava Bevan purchased the parcel, her predecessor in interest had already divided the parcel, which parcel is approximately six (6) acres, into two (2) tax descriptions.

The easement that exists for the purpose of serving the parcel does not meet the minimum private road requirement as set forth in Article VII, Section 7.1 of the Brandon Township Private Road Ordinance. . . . The Bevans, seeking to obtain two (2) building permits on their parcel, one (1) for each of the tax descriptions, applied to the Township Board of Zoning Appeals for a variance with regard to the road width (from the required 66' to 20', the amount they owned) so as to permit them to build a private road on the parcel, which private road would then entitle them to two (2) building permits. Section 2.5 of the Brandon Township Private Road Ordinance requires a private road when the roadway is going to service more than one (1) residence. The variance would not be necessary if the Bevan's [sic] sought to build only one house because the Bevans would be entitled to one permit, and could obtain that at any time.

The Brandon Township Zoning Board of Appeals denied the request for a variance with regard to the width requirement. As a result of that denial this Complaint was filed. The first two (2) Counts of the Complaint deal with the appeal, and a request for delayed appeal from the action of the Zoning Board of Appeals. The next three Counts of the Complaint deal with, "Violation of Constitu-

tional Rights," "Civil Rights Act" and "Declaratory Judgment: Township of Brandon's Private Road Ordinance as Unconstitutional."

Since the Board of Appeals action, the Bevans have tried unsuccessfully to sell the property to the Department of Natural Resources.

The access easement is unimproved and there has been no construction on the building sites. (See Minutes of Board of Appeals, attached to Plaintiff's Complaint and accepted by Defendant.)

Bevans out of pocket damages to date are Five Thousand One Hundred Twenty Five ($5,125.00) Dollars attorney fees, costs of One Hundred Seventy ($170.00) Dollars for expert witness fees, Fifty ($50.00) Dollars court costs, and Sixteen ($16.00) Dollars subpoena fees for a total of Five Thousand Three Hundred Sixty One ($5,361.00) Dollars. [Emphasis in original.]