CITY OF NOVI v WOODSON

Docket No. 224291. Submitted March 11, 2002, at Detroit. Decided June
  11, 2002, at 9:05 A.M.

The city of Novi brought an action in the Oakland Circuit Court
  against John L. and Karen J. Woodson, seeking to acquire for public
  purposes a parcel of land owned by the defendants that was
  located in Novi. Before the defendants purchased the parcel in
  1981, Mrs. Woodson was informed by a Novi employee that the par-
  cel could be used for outside storage in conjunction with the defen-
  dants' tree removal business without having to submit a site plan to
  the planning commission. After the purchase, the defendants used
  the parcel for outside storage in conjunction with their business.
  When the plaintiff was unable to negotiate the purchase of the par-
  cel and after the defendants had rejected the plaintiff's good-faith
  offer to purchase the parcel, the plaintiff passed a resolution
  regarding the public improvement, issued a declaration of taking,
  and thereafter filed its complaint, seeking title to the parcel if the
  defendants did not contest the necessity of the taking and a jury
  trial regarding the amount of just compensation if the defendants
  continued to contest the amount of its good-faith offer. Within sixty
  days of the filing of the complaint, the defendants' attorney sent a
  letter to the plaintiff's attorney indicating that the defendants
  believed that the plaintiff's good-faith offer was incomplete and
  that the defendants "reserve the right to claim just compensation"
  for certain items, including business interruption damages. Because
  the defendants did not contest the necessity of the taking, the
  court, Nanci J. Grant, J., ordered that title and possession of the
  parcel be vested in the plaintiff, that the plaintiff pay to the defen-
  dants the amount of the good-faith offer, and that the right of the
  defendants to pursue additional compensation in court be pre-
  served. Before trial, the plaintiff moved to prohibit the defendants
  from submitting at trial evidence other than the fair market value
  of the property, specifically arguing that defendants' claim for busi-
  ness interruption damages was barred by subsection 5(3) of the
  Uniform Condemnation Procedures Act, MCL 213.55(3), because of
  the failure of the defendants to file a timely written claim for busi-
  ness interruption damages that contained sufficient information
  and details to satisfy the requirements of that subsection. The court

denied the motion, finding that the August 25, 1997, letter satisfied the notice requirement of MCL 213.55(3) or, in the alternative, that the plaintiff was estopped from raising the failure of the defendants to file a timely adequate claim because it had acted as though the defendants had filed a valid claim and had failed to raise the issue of the adequacy of the claim until after the defendants had hired their expert witnesses for trial. A jury returned a verdict for the defendants, finding a value of the property itself in excess of the good-faith offer price already paid to the defendants and finding that the defendants were entitled to a further amount for business interruption damages. The court entered a judgment on the verdict and ordered the plaintiff to pay to the defendants attorney fees and expert witness fees. The plaintiff appealed, and the defendants cross appealed.

The Court of Appeals *held*:

1. MCL 213.55(3) provides that an owner who believes that a condemning agency's good-faith offer failed to include one or more items of compensable property or damage "shall, for each item, file a written claim" with the condemning agency, that the "owner's written claim shall provide sufficient information and detail to enable the agency to evaluate the validity of the claim and to determine its value," and that such claims shall be filed within ninety days after the good-faith offer was made or within sixty days after the complaint was filed, whichever is later. MCL 213.55(3) further provides that a court may extend the time in which to file such claims for good cause shown, but that if an owner fails to file a timely written claim in accordance with that subsection, the claim is barred.

2. The requirement of MCL 213.55(3) that an owner's written claim provide "sufficient information and detail to enable the agency to evaluate the validity of the claim and to determine its value" indicates a clear intent by the Legislature that an owner is to provide a specific and detailed basis for the assertion that the good-faith offer was deficient. The letter sent by the defendants' attorney to the plaintiff's attorney in which the defendants "reserved the right to claim just compensation" for business interruption damages is not the type of detailed written claim contemplated by MCL 213.55(3). A reservation of the right to make a claim is clearly insufficient to satisfy the statute's requirement that a landowner file a detailed claim within the statutory time limits. Accordingly, the trial court erred in finding that the letter sent by the defendants' attorney satisfied the claim requirement of MCL 213.55(3).

3. Because the defendants neither sought from the plaintiff a delay in the filing of its complaint nor sought from the trial court an extension of the filing period in order to make whatever investigation was necessary to make a more detailed claim for business interruption damages, the defendants will not be heard to complain that the statute does not provide a reasonable time in which to make such a claim.

4. MCL 213.55(3) bars a landowner from seeking compensation for additional items of property or damage where a claim satisfying the requirements of the statute has not been made within the statutory period and is intended thereby to relieve the condemning agency from open-ended liability for such additional items of compensation. Courts are reluctant to apply equitable principles to allow expired claims to proceed unless one party has knowingly concealed or falsely represented a material fact while inducing the other party to reasonably rely on that misapprehension. The plaintiff did nothing to prevent the defendants from complying with the statute and raised the question of the compliance with the statute in its motion to prohibit the presentation of evidence shortly after it received the defendants' witness list that indicated that the defendants intended to present evidence concerning a business interruption claim. Accordingly, the defendants' business interruption claim was barred as a matter of law, and the trial court erred in allowing that claim to proceed to trial.

5. The portion of the jury's verdict relating to the business interruption claim must be vacated. Further, the portion of the trial court's award of interest, attorney fees, and witness fees that is associated with the business interruption verdict must be reversed, and the case must be remanded to the trial court for reconsideration of the interest and fees to be awarded.

6. The trial court's instructions adequately informed the jury regarding the applicable law and adequately framed the issue whether the defendants' use of the property was lawful. The trial court did not err in refusing to give the plaintiff's requested special instruction regarding whether the defendants' use of the property was lawful.

Affirmed in part, vacated in part, reversed in part, and remanded.

EMINENT DOMAIN — UNIFORM CONDEMNATION PROCEDURES ACT — CLAIMS FOR ADDITIONAL COMPENSATION.

A letter sent by a landowner to a condemning agency in response to a complaint to condemn land for a public purpose that states a belief that the condemning agency's good-faith offer was incomplete and expresses an intent to reserve the right to claim just compensation for business interruption damages does not satisfy the requirement

of the Uniform Condemnation Procedures Act that provides that a landowner who intends to claim a right to just compensation for items of compensable property or damage not included in the good-faith offer must do so in a written claim that provides sufficient information and detail to enable the condemning agency to evaluate the validity of the claim and to determine its value (MCL 213.55[3]).

*Secrest, Wardle, Lynch, Hampton, Truex & Morley* (by *Gerald A. Fisher, Thomas R. Schultz,* and *David C. Wiegel*), for the plaintiff.

*Jackier, Gould, Bean, Upfal & Eizelman,* for the defendants.

Before: SAAD, P.J., and BANDSTRA and SMOLENSKI, JJ.

SAAD, P.J. In this condemnation case, plaintiff, city of Novi, appeals as of right from the trial court's order of final judgment following a jury verdict in favor of defendants, John and Karen Woodson. Novi's issues on appeal also concern the trial court's order denying its motion in limine. The Woodsons filed a cross appeal and argue that the trial court erred in failing to award mediation sanctions and abused its discretion by ordering Novi to pay only a portion of the Woodsons' expert witness fees. We affirm in part, vacate in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

In 1981, Louis and Mildred Gavar sold the Woodsons a lot measuring approximately one-half acre (0.55586 acre), contiguous to West Road in the city of Novi. Mrs. Woodson testified at trial that they bought the vacant lot to store wood and heavy equipment used in their tree removal business. Before she

bought the lot, Mrs. Woodson went to the offices of the city of Novi to confirm that outdoor storage was permitted. Mrs. Woodson testified that a Novi employee, "Mr. Bailey," told her that no site plan was necessary because their intended use was the same as the prior owners' use of the lot. Accordingly, the Woodsons closed on the lot purchase on December 31, 1981, without submitting a site plan to the planning board and without obtaining a certificate of occupancy.

Between 1981 and 1996, the Woodsons' tree removal business grew and aerial photographs of the property show that, over the years, their use of the property expanded significantly. Mrs. Woodson testified that, in 1985, she learned that the zoning for the lot had changed to light industrial, but that the change did not affect their use of the land because their use was a legal, nonconforming use that continued from the prior owners.[1]

During the winter of 1996-97, a representative from JCK and Associates (JCK) called Karen Woodson to negotiate the purchase of her property on behalf of Novi. Novi determined that it was necessary to extend Taft Road, north of Twelve Mile, for the use

---

[1] Notwithstanding Karen Woodson's testimony that she believed she complied with the zoning ordinances, Novi's witnesses testified that, from the outset, the Woodsons' use was clearly an illegal, nonconforming use. Novi planning consultant Rodney Arroyo testified that the Woodsons' use of the lot was illegal because they used it for outdoor equipment and wood storage and failed to submit a site plan, failed to obtain planning board approval, and failed to obtain a certificate of occupancy, as required by Novi's zoning ordinances. Though Arroyo acknowledged that Novi never cited them for the violations, he testified that the Woodsons' use was illegal because they commenced a new and different use of the property and significantly expanded their use of the property, while failing to obtain city approval.

and benefit of the public. The city engineers at JCK found it necessary to build the extension across the Woodsons' property and, accordingly, offered the Woodsons $20,000 for the lot. The Woodsons refused to sell and, on May 19, 1997, Novi submitted a good-faith offer to purchase the lot for $38,000. The Woodsons rejected the good-faith offer and, on June 2, 1997, Novi passed a resolution regarding the road extension and issued a declaration of taking on June 12, 1997.

Novi filed a complaint on July 30, 1997, and requested that the court enter an order vesting title in the property in Novi if the Woodsons failed to file a motion to review the necessity of the taking under MCL 213.56(1). Novi also requested a jury trial to determine the amount of just compensation for the lot if the Woodsons continued to contest the amount of its good-faith offer. On August 25, 1997, the Woodsons' attorney sent a letter to Novi's attorney that stated that, under MCL 213.55(3), the Woodsons "reserve the right to claim just compensation for [among other claims,]. . . business interruption damages and/or going concern damages . . . ." The Woodsons did not contest the necessity of the taking, and, therefore, the trial court entered a stipulated order vesting title in and granting possession of the lot to Novi, effective October 14, 1997. The order further ordered Novi to pay the Woodsons the amount of the good-faith offer, $38,000, and preserved the Woodsons' right to pursue additional compensation in court.

Discovery proceeded and, on August 26, 1998, Novi filed a motion in limine to prohibit the Woodsons from submitting evidence at trial regarding any dam-

ages other than for the fair market value of the property. Specifically, Novi argued that the Woodsons' business interruption damages claim was barred under subsection 5(3) of the Uniform Condemnation Procedures Act (UCPA), MCL 213.55(3), which states that claims for such damages must be filed within ninety days of the date the good-faith written offer was made or within sixty days of the date the complaint was filed, whichever is later. MCL 213.55(3). Novi further asserted that the Woodsons' letter of August 25, 1997, did not constitute a written claim for those damages and that the limitation period expired on September 29, 1997, sixty days after Novi filed its complaint.[2]

The trial court ultimately denied Novi's motion in limine. A jury trial began on September 13, 1999, and witnesses testified for both sides regarding the value of the property and the Woodsons' business interruption damages claim. Following deliberations, the jury awarded the Woodsons $160,000 for the taking and $90,000 for business interruption damages. Thereafter, on December 2, 1999, the trial court entered a final judgment. The trial court ordered that, in addition to the amount paid pursuant to the good-faith offer of $38,000, Novi must pay $249,035, plus interest. The trial court also ordered Novi to pay the Woodsons $80,000 in attorney fees, $9,531.25 in

---

[2] Novi also filed a motion for summary disposition under MCR 2.116(C)(10) and argued that there is no genuine issue of material fact that the Woodsons' use of the property constituted an illegal, nonconforming use for which they cannot be compensated. The Woodsons responded by also moving for summary disposition. The Woodsons argued that Novi's claim is barred by the doctrines of laches and estoppel because Novi did not complain about the Woodsons' use of the lot during the sixteen years they used it as a wood lot. The trial court denied both motions for summary disposition.

expert witness fees for their real estate appraiser, and $18,000 in expert witness fees for their financial consultant.

## II. ANALYSIS

### A. BUSINESS INTERRUPTION/GOING CONCERN DAMAGES

Novi contends that the jury's award for business interruption damages should be vacated because the trial court erred in denying its motion in limine to exclude evidence of those damages pursuant to MCL 213.55(3). We agree.

While Novi's specific appeal addresses the trial court's admission of evidence, the basis for its motion in limine is Novi's legal position that the Woodsons' claim is barred by the limitation period set forth in MCL 213.55(3). Absent a disputed issue of fact, this Court decides de novo, as a question of law, whether a cause of action is barred by a statute of limitations. *Colbert v Conybeare Law Office*, 239 Mich App 608, 613-614; 609 NW2d 208 (2000). Further, "[t]he interpretation of statutes is also a question of law that we consider de novo." *Id.* at 614. This Court has also held that it reviews de novo issues arising under the UCPA. *Silver Creek Drain Dist v Extrusions Div, Inc*, 245 Mich App 556, 562; 630 NW2d 347 (2001).

The application of the time limit for filing a claim for additional items of compensable property or damage following a city's good-faith offer is an issue of first impression in this state. MCL 213.55(3). The UCPA was amended by 1996 PA 474 to add, among other provisions, subsection 5(3), which provides:

If an owner believes that the good faith written offer made under subsection (1) did not include or fully include 1 or more items of compensable property or damage for which the owner intends to claim a right to just compensation, the *owner shall, for each item, file a written claim with the agency. The owner's written claim shall provide sufficient information and detail to enable the agency to evaluate the validity of the claim and to determine its value. The owner shall file all such claims within 90 days after the good faith written offer is made pursuant to section 5(1) or 60 days after the complaint is filed, whichever is later.* Within 60 days after the date the owner files a written claim with the agency, the agency may ask the court to compel the owner to provide additional information to enable the agency to evaluate the validity of the claim and to determine its value. For good cause shown, the court shall, upon motion filed by the owner, extend the time in which claims may be made, if the rights of the agency are not prejudiced by the delay. Only 1 such extension may be granted. After receiving a written claim from an owner, the agency may provide written notice that it contests the compensability of the claim, establish an amount that it believes to be just compensation for the item of property or damage, or reject the claim. If the agency establishes an amount it believes to be just compensation for the item of property or damage, the agency shall submit a good faith written offer for the item of property or damage. The sum of the good faith written offer for all such items of property or damage plus the original good faith written offer constitutes the good faith written offer for purposes of determining the maximum reimbursable attorney fees under section 16. *If an owner fails to file a timely written claim under this subsection, the claim is barred.* If the owner files a claim that is frivolous or in bad faith, the agency is entitled to recover from the owner its actual and reasonable expenses incurred to evaluate the validity and to determine the value of the claim. [Emphasis added.]

Neither party contends that the language of MCL 213.55(3) is ambiguous. Our Supreme Court recently

reiterated that "[t]he primary goal of statutory interpretation is to discern and give effect to the intent of the Legislature." *Crowe v Detroit*, 465 Mich 1, 6; 631 NW2d 293 (2001). The Court further observed:

"This task begins by examining the language of the statute itself. The words of a statute provide 'the most reliable evidence of its intent . . . .' If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. No further judicial construction is required or permitted." [*Id.*, quoting *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999) (citations omitted).]

Under the plain language of the statute, a landowner must file a written claim for each item of damages the landowner believes was not properly included in the city's good-faith offer of purchase within ninety days after the good-faith written offer is made or within sixty days after the complaint is filed, whichever is later. Here, the parties do not dispute that the Woodsons must have made their written claim to Novi by September 29, 1997, sixty days after the complaint was filed (July 30, 1997), because that is the longer of the two applicable periods.

As noted, on August 25, 1997, the Woodsons' attorney sent a letter to Novi's attorney, which states, in pertinent part:

The Uniform Condemnation Procedures Act ("UCPA"), Section 5(3), as amended, establishes the procedure for owners to follow when they believe that the condemning agency's "good faith written offer" is incomplete. Be advised that, in connection with the above-captioned action, the Woodson Defendants believe that Plaintiff's "good faith written offer" is incomplete. The Woodsons *reserve the right to claim* just compensation for:

1. Real estate;

2. Business interruption avoidance damages and/or going concern damages;

3. Inventory; and

4. Immovable fixtures, movable business property, trade fixtures, equipment, and the like. [Emphasis added.]

In its opinion and order entered on October 30, 1998, the trial court ruled that the Woodsons complied with MCL 213.55(3) and, alternatively, if the Woodsons violated the statute, Novi is estopped from asserting the time limit defense because Novi acted as though the claim was valid and failed to raise the issue until after the Woodsons hired their expert witnesses for trial.

The trial court erred to the extent that it ruled that the Woodsons' August 25, 1997, letter constituted a timely, written claim under MCL 213.55(3). Under the statute, a letter that simply "reserves" the right to make a future claim or challenge to a good-faith offer is, by its own terms, not a claim or a challenge, but a statement of intent to do so in the future. The reservation of a claim simply expresses the possibility that a claim may or may not be asserted at a later time. Were we to hold that the Woodsons' "reservation" satisfies the statute, which requires a written claim that provides "sufficient information and detail to enable the agency to evaluate the validity of the claim and to determine its value," we would place the city in the untenable position of being unable to amend its good-faith offer before going to trial and having to prepare to defend against various "potential" claims that might or might not arise. Also, the plain language of MCL 213.55(3) makes it clear that its purpose is not simply to put the city on "notice" but, more importantly, to provide the city with sufficient *detail* to

evaluate the value of the property and reevaluate its good-faith offer. A letter that simply states that the landowner "reserves the right" to make a claim is, on its face, insufficient under the plain language of the statute.

Furthermore, the language of the statute shows a clear intent by the Legislature to encourage the parties to come to some form of agreement to *avoid* litigation costs and protracted adjudication of every dispute regarding the value of the property. To this end, the statute places the burden on the landowner to advise the city why its original good-faith offer is insufficient, on an item specific and detailed basis. Unless and until the landowner does so, the city is not in a position to make the appropriate adjustments to its offer. Were we to rule that it is sufficient to file a mere conclusory statement about a potential future challenge, without requiring some detail and support, a landowner would be allowed to list numerous challenges to "preserve a claim" and later abandon any number of those claims, as occurred in this case.[3]

Moreover, the statute does not make it incumbent on the city to compel more information,[4] whereas the Legislature's language makes the property owner's obligation mandatory.[5] The Legislature clearly avoided putting the city in a position in which it must seek

---

[3] Though they "reserved" them, at trial, the Woodsons did not assert damage claims for inventory, immovable fixtures, movable business property, trade fixtures, or equipment.

[4] The statute permissively allows a city to amend its good-faith offer after it "contests the compensability of the claim, establish[es] an amount that it believes to be just compensation for the item of property or damage, or reject[s] the claim."

[5] Regarding the property owner's obligations, the Legislature used the word "shall," making the "sufficient information and detail" requirement mandatory, not merely permissive.

more information about a variety of potential claims without any knowledge of the seriousness or basis for the alleged damages. Furthermore, a landowner is in the best position to provide more information if it is believed that a city has failed to take into account the actual damages that would be suffered by the taking, and the Woodsons were obligated to provide that information here. Accordingly, to shift the burden to the city when the landowners have failed to satisfy their obligations is contrary to the statutory scheme and defies common sense. The penalty for failing to file a claim under MCL 213.55(3) is clear: "If an owner fails to file a timely written claim under this subsection, the claim is barred."[6]

The Woodsons argue that it is unreasonable to require a landowner to make a detailed claim that complies with the statute within the time set forth in the statute. Importantly, however, nothing in the statute precludes a landowner from negotiating with the city for an extension of time before the complaint is filed. For example, if the city agreed to withhold filing the complaint for a number of days or months while negotiating the good-faith offer, the landowner would have ample opportunity to conduct whatever investigation necessary to provide more details regarding business damages. Further, if the city refused to provide the landowner more time before filing the complaint, the landowner has sixty days from the time of the filing of the complaint to further refine a damage

---

[6] The logical effect of the 1996 amendment is also clear. The burden placed on the landowner will expedite the condemnation process: Requiring the submission of additional claims within a reasonable time allows a city to submit a more accurate, and probably more generous, good-faith offer for the condemned property.

assessment. Moreover, the statute clearly allows the landowner to ask the trial court for an extension of the time in which to file a claim (the length of which is within the trial court's discretion upon a showing of good cause) if additional time is needed to conduct an investigation of potential damages claims.

Accordingly, the statute provides numerous protections and options for a landowner in precisely the situation presented here. While we are sympathetic to these landowners because they assert that they did not know whether their claim would be for business interruption damages or going concern damages, they could have asked the city of Novi for an extension of time and, clearly, could have asked the trial court to extend the time for filing a claim so they could investigate this issue, if they were genuinely concerned that any initial estimate that they made would be speculative.[7]

---

[7] We further note that, while the Woodsons assert that the statute is "unfair" because they remained in possession of the property and did not have sufficient time to find a replacement lot to determine the nature of their damages, the statute does not make the distinction between whether the property has already changed hands. The time limits in the statute are clear, and, quite simply, the landowners' assertion rings hollow when they did not ask for more time to investigate their claim as they clearly could have done under the statute. Moreover, the landowners' claim is unpersuasive because Novi informed Mrs. Woodson about the taking and made an initial good-faith offer as early as February 1997; knowing that they would need to move, they could have from that date continued negotiating the offer, looked for an alternate lot, and investigated their business damages.

This Court will not read the statute in a manner inconsistent with its plain terms merely because the Woodsons assert that it was too early to file a more specific claim, particularly where they failed to pursue the options available to them under the statute. Nor will we sanction the mere notice of one or more potential claims when the Legislature clearly set forth a much more specific statutory scheme.

Our holding also serves to clarify the application of MCL 213.55(3) for the benefit of the bench and bar. Indeed, it is critical that both govern-

Perhaps realizing that the Woodsons' attorney's August 25, 1997, letter fell short of the statutory requirements, the trial court alternatively ruled that, regardless of whether the Woodsons complied with the statute, Novi is nonetheless estopped from raising the time limit in the statute. Again, we disagree.

As Novi correctly asserts, MCL 213.55(3) acts as a statute of repose because it prohibits making a claim after a specified period and is designed to relieve the city from open-ended liability. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). Even in the context of less rigid statute of limitations claims, this Court is reluctant to apply equitable principles to allow expired claims to go forward unless "one party has knowingly concealed or falsely represented a material fact, while inducing another's reasonable reliance on that misapprehension, under circumstances where the relying party would suffer prejudice if the representing or concealing party were subsequently to assume a contrary position." *Adams v Detroit*, 232 Mich App 701, 708; 591 NW2d 67 (1998). Further, "our Supreme Court has been 'reluctant to recognize an estoppel in the absence of conduct clearly designed to induce the plaintiff to refrain from bringing action within the period fixed by statute.'" *Id.*, quoting *Lothian v Detroit*, 414 Mich 160, 177; 324 NW2d 9 (1982).

Here, the trial court ruled that Novi was estopped from challenging the Woodsons' claim for business interruption damages because the city waited for almost a year before filing its motion in limine. How-

---

ment agencies and landowners follow the unambiguous requirements of this new and comprehensive legislation, for the benefit and protection of both parties and to fulfill the clear purposes of the statute.

ever, the record reflects that Novi filed its motion not on the eve of trial, but shortly after it received the Woodsons' witness list and immediately after the Woodsons' expert's deposition revealed that the Woodsons would present testimony to support a business interruption claim. Novi's motion constituted a proper request to preclude that evidence, which, as noted, was clearly time-barred because the Woodsons failed to comply with the statutorily mandated written claim requirement.

Moreover, Novi did nothing to prevent the Woodsons from complying with the statute and did nothing to encourage the Woodsons to violate its terms. *Adams, supra* at 708. Indeed, as Novi observes, the reasons the trial court cited for its decision all occurred well after the statutory period expired. Thus, the fact that Novi negotiated with the owners concerning deadlines for experts' reports and filed a motion seeking to compel the court to set an appraisal exchange date is irrelevant to the consideration of the questions whether and why the Woodsons failed to file a timely written claim under MCL 213.55(3). The Woodsons did not comply with the plain language of the statute, MCL 213.55(3), which places a strict time limit on bringing a claim for business interruption damages. The intent of this statute of repose is clear on its face, and the trial court should not have ruled contrary to its unequivocal requirements. Accordingly, the Woodsons' claim was barred as a matter of law, and the trial court erred in not granting Novi's motion in limine to preclude presentation of evidence of this claim at trial.

For these reasons, we vacate the business interruption portion of the jury award, $90,000. Further, we

reverse the trial court's award of interest, attorney fees, and witness fees associated with that verdict and remand this matter to the trial court for reconsideration of the interest and fees to be awarded in light of this ruling.[8]

### B. JURY INSTRUCTIONS

Novi argues that the trial court erred in refusing to give a special jury instruction regarding whether the Woodsons' use of the property was lawful.[9]

This Court "review[s] jury instructions in their entirety to determine whether the instructions given adequately informed the jury regarding the applicable law reflecting and reflected by the evidentiary claims in the particular case." *Rickwalt v Richfield Lakes Corp*, 246 Mich App 450, 459; 633 NW2d 418 (2001). As this Court further explained in *Central Cartage Co v Fewless*, 232 Mich App 517, 528; 591 NW2d 422 (1998):

> Generally, a trial court may give an instruction not covered by the standard instructions as long as the instruction accurately states the law and is understandable, concise, conversational, and nonargumentative. Supplemental instructions need not be given if they would add nothing to an otherwise balanced and fair jury charge nor enhance the ability of the jury to decide the case intelligently, fairly, and impartially. Moreover, it is error to instruct a jury with regard to a matter not sustained by the evidence or the pleadings. Jury instructions are to be reviewed in their

---

[8] In light of our decision to vacate the jury's verdict relative to the Woodsons' claim for business interruption damages, we need not address the Woodsons' claim regarding mediation sanctions.

[9] In light of our disposition of the claim for business interruption damages, we need not address Novi's claims regarding its requested special instructions regarding business interruption damages and lost profits.

entirety, and there is no error requiring reversal if, on balance, the theories of the parties and the applicable law were fairly and adequately presented to the jury. [Citations omitted.]

In determining the fair market value of a property, the Supreme Court has held that a landowner in a condemnation case is "entitled to an award based upon the highest and best use of her land; and the jury [i]s entitled to consider every legitimate use." *St Clair Shores v Conley*, 350 Mich 458, 462; 86 NW2d 271 (1957). Novi agrees that the jury could consider the Woodsons' use of the property in determining the "highest and best use," but only if that use was legal (did not violate Novi's zoning laws). Thus, Novi attempted to prove that the Woodsons' use was an illegal, nonconforming use from the time they began storing wood and machinery on the property. In contrast, the Woodsons attempted to prove that their use was a legal, nonconforming use.[10]

The trial court gave the jury the applicable standard jury instructions regarding its determination of

---

[10] As our Supreme Court has explained, " ' "[a] prior nonconforming use is a vested right to continue the lawful use of real estate in the manner it was used prior to the adoption of a zoning ordinance." ' " *Bevan v Brandon Twp*, 438 Mich 385, 401; 475 NW2d 37 (1991), quoting *Gackler Land Co, Inc v Yankee Springs Twp*, 427 Mich 562, 573; 398 NW2d 393 (1986). The *Bevan* Court further observed that " '[t]he test in each case is not whether a little or a lot has been spent in reliance upon the past zoning classifications, but, rather, " 'whether there has been any tangible change in the land itself by excavation and construction.' " ' " *Bevan, supra* at 401-402, quoting *Gackler, supra* at 575. These principles have been partially codified under MCL 125.216(1), which provides, in pertinent part:

The lawful use of a . . . premise as existing and lawful at the time of enactment of a zoning ordinance, or in case of an amendment of an ordinance, then at the time of the amendment, may be continued although that use does not conform with the provisions of the zoning ordinance or amendment.

the market value of the property and its highest and best use. After reviewing the evidence presented and the jury instructions in their entirety, we hold that the trial court "adequately informed the jury regarding the applicable law reflecting and reflected by the evidentiary claims in the particular case." *Rickwalt, supra* at 459. We further hold that the trial court did not err in failing to give Novi's special instruction. The jury heard conflicting testimony regarding the value of the property, and, by its verdict, it clearly agreed with the Woodsons' experts that their use of the property was a legal nonconforming use and should be valued accordingly. In light of all the evidence, we will not overturn the jury's verdict under the principle that "[a]n award of just compensation that falls within the range of testimony ought not to be disturbed." *Hartland Twp v Kucykowicz*, 189 Mich App 591, 598; 474 NW2d 306 (1991).[11]

Affirmed in part, vacated in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[11] The jury's verdict was also consistent with the jury instructions and the evidence presented. Overwhelming evidence showed that Novi did not cite the Woodsons for an "illegal use" over the sixteen years they used the property as a wood lot. Indeed, the evidence clearly showed that Novi only raised the issue of the legality of the use once it learned it would have to pay the Woodsons for the land. It follows that the Woodsons should not be penalized for making the most advantageous use of the lot to which Novi acquiesced, despite a belated assertion that they technically violated the zoning rules.