*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BOARD OF COUNTY ROAD
COMMISSIONERS FOR THE COUNTY OF
WASHTENAW,

        Plaintiff-Appellee,

v

MILDRED SHANKLE, KEVIN C. NEVAUX,
JANET L. NEVAUX, CHRISTINA L. LIRONES,
and STEPHEN W. BERGER,

        Defendants-Appellants.

FOR PUBLICATION
March 19, 2019
9:00 a.m.

No. 340612
Washtenaw Circuit Court
LC No. 17-000782-CC

Before: STEPHENS, P.J., and GLEICHER and BOONSTRA, JJ.

BOONSTRA, J.

Defendants appeal by leave granted[1] the trial court's order denying their motion for summary disposition under MCR 2.116(C)(4) and (C)(10).[2] We reverse and remand for entry of an order granting summary disposition in favor of defendants.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This condemnation action relates to a road improvement project for the reconstruction and repaving of a portion of Textile Road in Pittsfield Charter Township. According to plaintiff,

---

[1] *Washtenaw Co Bd of Co Rd Comm'rs v Shankle*, unpublished order of the Court of Appeals, entered May 10, 2018 (Docket No. 340612) (granting application for leave to appeal as to Issues I through V, relating to the trial court's jurisdiction, and otherwise denying leave for lack of merit).

[2] Defendants' motion was also brought under MCR 2.116(C)(8), but the trial court never specifically addressed the grounds for summary disposition found in that subrule. That aspect of defendants' motion is not at issue in this appeal.

the project affects 42 parcels of real property along Textile and Platt Roads. Plaintiff in part sought temporary grading permits or agreements not involving a permanent taking. Plaintiff reached agreements with 19 of the 22 affected fee owners (i.e., all except defendants). Plaintiff also sought permanent right-of-way easements, and reached agreements with four of five affected fee owners (i.e., all except defendant Mildred Shankle).

Shankle owns two parcels of real property affected by the project – 6094 Michigan Avenue and 2992 Textile Road. Defendants Kevin and Janet Nevaux own a single parcel affected by the project – 2350 Textile Road. Defendants Christina Lirones and Stephen Berger own a single parcel affected by the project – 151 E. Textile Road. Consequently, four parcels owned by three sets of fee owners (defendants) are at issue in this case.

In August 2017, plaintiff filed this action against defendants, alleging that defendants had rejected its good faith offers to pay just compensation. Defendants moved for summary disposition of the action, asserting a lack of subject matter jurisdiction, as well as challenges to the necessity of the action. Regarding the asserted lack of subject matter jurisdiction, defendants claimed that plaintiff had failed to tender a good faith offer to all owners of all interests in each of the subject parcels, and had made additional procedural errors, such that it had failed to properly invoke the jurisdiction of the trial court. Defendants provided an affidavit from Patrick McVeigh, a title insurance attorney, stating there were at least four additional interest-holders of record, aside from defendants' fee interests, who did not receive good-faith written offers: (1) Mortgage Electronic Registration Systems, Inc. (MERS), as disclosed by a mortgage encumbering the Nevaux property; (2) the State of Michigan Department of Agriculture, as disclosed by a Farmland Development Rights Agreement encumbering the Lirones/Berger property; (3) Pittsfield Charter Township, as disclosed by an Easement for Recreational Trail encumbering one of the Shankle properties; and (4) Michigan Bell Telephone Company, as disclosed by an easement encumbering the second Shankle property. The affidavit further stated that these interests were "examples only and not a complete recitation of all potential owners" because the affiant had "not undertaken full title examinations." Defendants also maintained that plaintiff was required to continue negotiating before filing the condemnation action, rather than filing such an action at the time its initial offers were rejected.

After a hearing, the trial court denied defendants' motion insofar as it related to subject matter jurisdiction, stating:

> . . . I am finding there is no material factual dispute and I do not find that the Complaint is materially defective such that it requires the harsh remedy of dismissal. And, therefore, the just compensation claim will proceed. Your point is well taken, that there is the anticipated second hearing on necessity where objections have been raised. I am not ruling on that today. However, having heard at least the cursory arguments, I am not at all convinced it requires an evidentiary hearing. You talk about a time you'll come back within that 30 days, my preference would be not at the late minute, but sometime before that. I'll hear those arguments and then if I think I require to hear from witnesses for purposes of that hearing, I'll tell you who I would like to hear from, and what the subject matter would be. But I don't want to say just because you have a second hearing it's like Field of Dreams, if I build it, you will come. I mean, I – you know, I'm

not convinced on that. So go – so the first order I'll sign, set a time to come back and argue on the necessity objection, but it is not an evidentiary hearing, I'll hear your arguments if you proffer to me at that hearing why you think I need to hear from somebody, I'll listen to that argument, and if we decide that I – I agree, then we'll set up the time to hear that.[3]

This Court granted defendants' application for leave to appeal, limited to the issues relating to subject matter jurisdiction.

## II. STANDARD OF REVIEW

We review de novo issues arising from interpretation and application of the Uniform Condemnation Procedures Act (UCPA), MCL 213.51 *et seq*. *Novi v Woodson*, 251 Mich App 614, 621; 651 NW2d 448 (2002). We also review de novo whether the trial court has subject-matter jurisdiction. *Clohset v No Name Corp (On Remand)*, 302 Mich App 550, 559; 840 NW2d 375 (2013).

## III. "STRICT COMPLIANCE" STANDARD

Defendants argue that the trial court erred by not requiring plaintiff to strictly comply with the procedural requirements for condemning property under the UCPA, and that because of plaintiff's failure to strictly comply, the trial court lacked subject matter jurisdiction. We agree.

As early as 1876, our Supreme Court stated:

> The rule is well settled, that in all cases where the property of individuals is sought to be condemned for the public use by adverse proceedings*, the laws which regulate such proceedings must be strictly followed*, and especially that every jurisdictional step, and every requirement shaped to guard the rights and interests of parties whose property is meant to be taken, *must be observed with much exactness.* [*Detroit Sharpshooters' Ass'n v Hamtramck Hwy Comm'rs*, 34 Mich 36, 37-38 (1876) (emphasis added).]

Michigan's appellate courts have approvingly reaffirmed this language ever since. See, e.g., *In re Petition of Rogers*, 243 Mich 517, 522; 220 NW 808 (1928) ("The statute of eminent domain is to be strictly construed and its jurisdictional conditions must be established in fact and may not rest upon technical waiver or estoppel."); *Detroit Int'l Bridge Co v Commodities Export Co*, 279

---

[3] After a subsequent hearing on defendants' challenges to the necessity of condemnation, including defendants' assertion that plaintiff may have acted fraudulently or abused its discretion in bringing this action, the trial court denied the remainder of defendants' motion. That ruling is not at issue on appeal.

-3-

Mich App 662, 672-673; 760 NW2d 565 (2008); *State Bd of Ed v Von Zellen*, 1 Mich App 147, 155-156; 134 NW2d 828 (1965) (citing additional cases requiring strict compliance).[4]

Plaintiff argues that the Legislature rejected the common-law strict-compliance requirement when it enacted the UCPA, but cites no legislative text or caselaw to support this assertion. As stated earlier, by 1876 the standard was "well settled," see *Detroit Sharpshooters' Ass'n*, 34 Mich at 37, as a foundational tenet of eminent domain law.[5] We will not depart from that tradition absent a clear statement from the Legislature or our Supreme Court. See *People v Woolfolk*, 304 Mich App 450, 497; 848 NW2d 169 (2014) (noting that while the Legislature has the authority to abrogate the common law, "[l]anguage used by the Legislature should show a clear intent to abrogate the common law" rather than mere implication). The trial court erred when it applied a lesser standard in determining that plaintiff's complaint was not "materially defective" and that strict compliance was not necessary.

Applying the proper standard, we conclude that the trial court lacked subject matter jurisdiction over plaintiff's complaint because the UCPA requires, as a necessary condition precedent to invoking the trial court's jurisdiction, that the condemning agency provide a good-faith written offer to all property owners of record affected by the proposed condemnation.

"Private property shall not be taken for public use without just compensation therefore being first made or secured in a manner prescribed by law." Const 1963, art 10, § 2. The "ultimate purpose" of the UCPA statutory scheme "is to ensure th[is] guarantee of just compensation" set forth in the Michigan Constitution. *Mich Dep't of Transp v Frankenlust Lutheran Congregation*, 269 Mich App 570, 576; 711 NW2d 453 (2006). To this end,

> [t]he UCPA, which governs the acquisition of property by public authorities through the power of eminent domain, see MCL 213.75, requires that before initiating negotiations for the purchase of property the authority "shall establish

---

[4] Although Michigan Court of Appeal cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), we may consider them as persuasive authority. *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

[5] We note that the strict-compliance requirement for the exercise of eminent domain is not unique to Michigan. See, e.g., *Cincinnati v Vester*, 281 US 439, 448; 50 S Ct 360; 74 L Ed 950 (1930) ("We understand it to be the rule in Ohio, as elsewhere, that the power conferred upon a municipal corporation to take private property for public use must be strictly followed."); *Indianapolis v Schmid*, 251 Ind 147, 149-150; 240 NE2d 66 (1968) ("Statutes of eminent domain are in derogation of common law rights of property and must be strictly followed, both as to the extent of the power and as to the manner of its exercise."); *D-Mil Prod, Inc v DKMT, Co*, 260 P3d 1262, 1267; 1011 OK 55 (2011) ("Additionally, eminent domain proceedings may only be initiated in strict compliance with the specific constitutional mandates and legislative enactments that confer eminent domain powers to the condemning entity. . . ."); 27 Am Jur 2d, Eminent Domain, § 365 (citing additional cases requiring strict compliance).

an amount that it believes to be just compensation for the property and promptly shall submit to the owner a good faith written offer to acquire the property for the full amount so established." MCL 213.55(1). [*Id.* at 572.]

More specifically, MCL 213.55(1) provides, in pertinent part:

> *Before initiating negotiations for the purchase of property,* the agency shall establish an amount that it believes to be just compensation for the property and *promptly shall submit to the owner a good faith written offer to acquire the property* for the full amount so established. . . . *If there is more than 1 owner of a parcel, the agency may make a single, unitary good faith written offer.* The good faith offer shall state whether the agency reserves or waives its rights to bring federal or state cost recovery actions against the present owner of the property arising out of a release of hazardous substances at the property and the agency's appraisal of just compensation for the property shall reflect such reservation or waiver. . . . *If an agency is unable to agree with the owner for the purchase of the property, after making a good faith written offer to purchase the property, the agency may file a complaint for the acquisition of the property in the circuit court in the county in which the property is located.* [Emphasis added.]

This Court has recognized " 'that the tendering of a good-faith offer is a necessary condition precedent to invoking the jurisdiction of the circuit court in a condemnation action.' " *Lenawee Co v Wagley*, 301 Mich App 134, 160; 836 NW2d 193 (2013) (citation omitted). In concluding that the good-faith offer is a jurisdictional requirement, this Court has not hesitated to dismiss condemnation actions for want of subject-matter jurisdiction where there was no good faith written offer. See, e.g., *In re Acquisition of Land for Central Indus Park Project*, 177 Mich App 11, 17-18; 441 NW2d 27 (1989) (*Central Indus Park Project II*).

The UCPA defines "property" as follows:

> [L]and, buildings, structures, tenements, hereditaments, easements, tangible and intangible property, and property rights whether real, personal, or mixed, including fluid mineral and gas rights. [MCL 213.51(i).]

The UCPA defines "owner" as follows:

> [A] person, fiduciary, partnership, association, corporation, or a governmental unit or agency having an estate, title, or *interest*, including beneficial, possessory, and security interest, in *a property sought to be condemned*. [MCL 213.51(f) (emphasis added).]

Reading these definitions together, for the purposes of the UCPA, an "owner" is a person or entity having an interest in the property sought to be condemned, and "property" includes land and other property rights. Therefore, plaintiff was required to provide a good-faith offer to purchase to all persons or entities with an interest in the properties.

-5-

Finally, MCL 213.55(1) expressly requires that a good-faith written offer include a statement of

> whether the agency reserves its rights to bring federal or state cost recovery actions against the present owner of the property arising out of a release of hazardous substances at the property and the agency's appraisal of just compensation for the property shall reflect such reservation or waiver.

Plaintiff acknowledges that a good-faith written offer to acquire the property is a necessary condition precedent to invoking the trial court's jurisdiction for a condemnation action, but argues that it satisfied this requirement. We disagree.

Plaintiff failed to identify numerous holders of interests in the properties at issue, or to satisfy the statutory requirements as to them. Based on the record, these include, at a minimum, Pittsfield Charter Township, the Michigan Department of Agriculture, Michigan Bell Telephone Company, and MERS.[6] Plaintiff does not dispute that these entities were never served with a good-faith offer to purchase. Rather, plaintiff argues that it subsequently made a determination that these four interest-holders were either partners in the development or not affected by the condemnation,[7] and that it therefore was unnecessary to include them in the condemnation process. We find this argument unpersuasive. In order to initially invoke the trial court's jurisdiction, strict compliance with the statutory language of the UCPA required that these (and any other) owners of legal property interests be given a good-faith offer.[8] Whether and to what extent the interests of those owners may (or may not) be affected is a matter that may properly be considered by the trial court, but only *after* the trial court's jurisdiction is properly invoked. Because plaintiff failed to strictly comply with the statutory requirements, the trial court never acquired subject-matter jurisdiction. Any consideration of the effects of plaintiff's condemnation actions with respect to particular ownership interests was therefore premature. See *Wagley*, 301 Mich App at 161; see also *Todd v Dep't of Corrections*, 232 Mich App 623, 628; 591 NW2d 375 (1998) (noting that when a court lacks subject matter jurisdiction, the only permissible action is to dismiss the case).

Further, while the other defendants were served with written documents on plaintiff's letterhead titled "Good Faith Offer to Purchase," which described the condemnation process

---

[6] Again, a full title examination has yet to be done, and the McVeigh Affidavit identified these four interest-holders as "examples only." Consequently, it is conceivable that there may be other interest-holders as well, a possibility that plaintiff has offered nothing to discount.

[7] Plaintiff relies on a September 15, 2017 (i.e., post-Complaint) Affidavit of County Highway Engineer Sheryl Soderholm Siddall, P.E., to establish that plaintiff "is not asserting any taking against" these four interest-holders.

[8] We note that at least one of the omitted owners, MERS, was the holder of a security interest in the entire Nevaux property, and was thus explicitly the type of "owner" to which the UCPA requires notice be given.

under the UCPA in detail, reserved the right to a recovery action, contained signature spaces for the property owner to accept the terms and conditions set forth in the offer, and included the applicable survey sketches and legal descriptions as attachments, the Nevaux defendants only received a document entitled "Compensation Estimate Market Study," which does not satisfy the statutory requirements and cannot constitute a good-faith written offer under the UCPA. The Compensation Estimate Market Study does not contain the required statement concerning "whether the agency reserves its rights to bring federal or state cost recovery actions against the present owner of the property arising out of a release of hazardous substances at the property and the agency's appraisal of just compensation for the property shall reflect such reservation or waiver." MCL 213.55(1). Moreover, nothing in the one-page document suggests that it was a written offer to purchase property for a specific sum, and not simply an in-house appraisal or estimate. Although plaintiff attempts to rehabilitate this jurisdictional defect with a post hoc affidavit from Curtis M. Brochure, the "Senior Right of Way Professional for the Washtenaw County Road Commission," the affidavit does not, at a minimum, cure the defect of the missing reservation-of-rights language required by MCL 213.55(1).

Because a good-faith written offer is a necessary condition precedent to invoking the trial court's jurisdiction in condemnation proceedings under the UCPA, the failure to tender a statutorily compliant good-faith written offer to the other owners of interests in the property, as well as the Nevaux defendants, rendered the trial court without subject-matter jurisdiction over the action. See *Wagley*, 301 Mich App at 160; *Central Indus Park Project II*, 177 Mich App at 17-18.[9]

We reverse and remand with directions to enter an order granting summary disposition in favor of defendants for lack of subject-matter jurisdiction, without prejudice to plaintiff's refiling the action in compliance with the statutory requirements. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Cynthia Diane Stephens
/s/ Elizabeth L. Gleicher

---

[9] Although plaintiff presents individual arguments concerning each of the identified additional owners of a property interest that it failed to serve, and argues that this Court could find that it properly invoked the trial court's jurisdiction for some, if not all, defendants, nothing in the UCPA permits us to pick and choose which interests over which the trial court has jurisdiction. Moreover, we have previously determined that it would be inappropriate for this Court or the trial court to retain jurisdiction to allow a plaintiff to cure a defect in a good-faith written offer. *Central Indus Park Project II*, 177 Mich App at 18. Rather, the condemning agency is free to refile its action in compliance with statutory requirements. *Id*.