*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MILFORD HILLS PROPERTIES, INC., and RPL
OF MICHIGAN, INC.,

UNPUBLISHED
September 2, 2021

Plaintiffs-Appellees,

v

Nos. 353249; 353489
Oakland Circuit Court
LC No. 2017-162642-CZ

CHARTER TOWNSHIP OF MILFORD,

Defendant-Appellant.

Before: LETICA, P.J., and SERVITTO and M. J. KELLY, JJ.

PER CURIAM.

These consolidated cases arise from a zoning dispute. In Docket No. 353249, defendant, the Charter Township of Milford, appeals as of right the circuit court's opinion and order denying its motion for summary disposition insofar as defendant claimed governmental immunity in response to tort claims brought by plaintiffs, who are real estate developers frustrated at defendant's refusal to rezone certain property to accommodate their aspirations. In Docket No. 353489, defendant appeals that same order by leave granted[1] insofar as it denied defendant's motions for summary disposition in connection with plaintiffs' non-tort claims and also defendant's invocation of an arbitration agreement. We affirm the trial court's determination that defendant has not shown that the arbitration agreement should be enforced, but reverse the court's denial of summary disposition in connection with all of plaintiffs' claims.

## I. FACTS

In or about 2002, defendant agreed to support plaintiffs' construction of a wastewater treatment plant in connection with plaintiffs' development of certain property. Plaintiffs sought approval of a plant with a capacity of 50,000 gallons per day, but defendant insisted on a capacity of 70,000 gallons per day. Plaintiffs agreed to construct a plant with the larger capacity on the

---

[1] *Milford Hills Props Inc v Charter Twp of Milford*, unpublished order of the Court of Appeals, entered July 9, 2020 (Docket No. 353489).

condition that they retain the right to use the anticipated excess of 20,000 gallons per day for the future development of property located on the west side of Milford Road. The parties entered into an agreement that stated that "the Township shall be obligated to use its 'best efforts' to expeditiously provide approval of all plans, paperwork, permits or otherwise to effectuate this Agreement."

In 2017, plaintiffs began the process of developing the property on the west side of Milford Road. They applied to defendant's planning commission to conditionally rezone the property to allow the construction of a development of a density that far exceeded the current zoning. Ultimately, the planning commission recommended that the request be denied, and defendant adopted that recommendation.

The trial court's order engendering these appeals noted the following particulars:

> The parcels that make up the subject property are zoned for Restricted Office and Suburban Residential. Current zoning allows for the development of 22 homes and 340,000 square feet of offices and necessary parking. Plaintiffs sought conditional rezoning of the subject property to build a single-family residential development. The initial plan presented by Plaintiffs was to build 178 homes. Plaintiffs reduced the number of homes in subsequent presentations. Following the denial by the [zoning board of appeals], Plaintiffs filed an Appeal (which was voluntarily dismissed) and the instant action.

Plaintiffs' complaint made issue of their rights to use any of their wastewater treatment plant's excess capacity in connection with development of real property they acquired, which they described as follows: "By the early part of 2017, the Plaintiffs had obtained ownership of or development rights over nine (9) parcels of land consisting of over 66 acres situated in the Charter Township of Milford, . . . and generally located west of Milford Road . . . ." Plaintiffs further reported that "[a] portion of the Property is currently being utilized for a single-family home, with the remainder being vacant land."

Plaintiffs set forth claims of breach of contract (Count I), promissory estoppel (Count II), taking without just compensation regarding the water-treatment plant (Count III) and the property (Count V), denial of substantive due process regarding the plant (Count IV) and the property (Count VI), tortious interference with prospective economic advantages (Count VII), fraudulent misrepresentation (Count VIII), and innocent misrepresentation (Count IX). Plaintiffs based their contract claim on the parties' June 5, 2003 Working/Development Agreement for Operation of Community Sewer System ("capacity agreement"). That agreement recites that the parties earlier "entered into an 'Agreement to Assume Responsibility for Operation of Community Sewer System,' " the provisions of which are not here at issue.

On February 15, 2019, defendant filed a motion for summary disposition, seeking dismissal of the contract and promissory estoppel claims on the grounds that plaintiff "failed to establish a contract or promise to rezone the subject property," seeking dismissal of the tort claims "on grounds of governmental immunity," citing MCL 691.1407, and seeking dismissal of the constitutional claims "because there is no genuine issue of material fact that Defendant's zoning

was not unreasonable, nor did it amount to a taking of Plaintiffs' Property." Proceedings were then stayed in deference to facilitation, which was not successful.

On December 18, 2019, plaintiffs filed a motion for summary disposition of Counts I through IV of their complaint on the ground that "there is no genuine issue as to any material fact sufficient for trial." Defendant followed with a second motion for summary disposition, in which it stated that "[i]n addition to the reasons set forth in Defendant's Motion for Summary Disposition, Defendants are entitled to dismissal of Plaintiffs' claims based on the arbitration language in the Capacity Agreement." After a hearing on the motions, the trial court issued an order stating that "neither party is entitled to summary disposition," because "[t]here are numerous genuine issues of material fact and Defendant has not shown that the arbitration agreement should be enforced under the facts presented." The court did not expressly address the issue of governmental immunity.

These appeals followed.

## II. GOVERNMENTAL IMMUNITY

MCR 2.116(C)(7) authorizes motions for summary disposition premised upon "immunity granted by law . . . ." This Court reviews a trial court's decision on a motion for summary disposition de novo as a question of law. *Ford Credit Int'l, Inc v Dep't of Treasury*, 270 Mich App 530, 534; 716 NW2d 593 (2006). A motion for summary disposition based on governmental immunity is decided by examining all documentary evidence submitted by the parties, accepting all well-pleaded allegations as true, and construing all evidence and pleadings in the light most favorable to the nonmoving party. *Tarlea v Crabtree*, 263 Mich App 80, 87; 687 NW2d 333 (2004).

Under the governmental tort liability act, MCL 691.1401 *et seq.*, governmental agencies are immune from tort liability for actions taken in furtherance of governmental functions, with limited, specific exceptions. MCL 691.1407(1). "[T]he immunity conferred upon governmental agencies is *broad*, and the statutory exceptions thereto are to be *narrowly* construed." *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 158; 615 NW2d 702 (2000) (emphasis in original). "A plaintiff filing suit against a governmental agency must initially plead his claims in avoidance of governmental immunity." *Odom v Wayne Co*, 482 Mich 459, 478-479; 760 NW2d 217 (2008).

A "governmental agency" for this purpose includes "this state or a political subdivision." MCL 691.1401(a). A "political subdivision" includes a municipal corporation. MCL 691.1401(e). " 'Municipal corporation' means a city, village, or township or a combination of 2 or more of these when acting jointly." MCL 691.1401(d). A "governmental function" is "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." MCL 691.1401(b). In this case, there is no dispute that defendant is a municipal corporation, or that its actions underlying this litigation were in furtherance of a governmental function. Even so, this issue has produced some unusual procedural history.

Two months after defendant claimed the appeal in connection with the governmental immunity issue, plaintiffs filed a motion in this Court to dismiss the appeal for mootness, explaining that, "[d]espite believing the tort claims to have merit, Plaintiffs/Appellees offered to

-3-

dismiss the three tort claims with prejudice to streamline the issues for trial and to avoid appeal, and filed a motion for voluntary dismissal," but that defendant objected, and the trial court ordered a stay of proceedings "before the motion to dismiss was heard."

Plaintiffs' motion below, a copy of which plaintiffs provided to this Court, stated that "plaintiffs have determined that it is the best interest of justice to dismiss the claims set forth in counts VII, VIII, and IX, which are based on State tort theory, as the defendant is likely to prevail under the theory of governmental immunity pertaining to these claims only." Defendant's response in opposition to the motion below correctly stated that the trial court lacked jurisdiction to act on the motion while the claim of appeal was pending, see MCR 2.614(D), and, alternatively, that, "[h]aving litigated this matter through discovery, briefing and a hearing on a motion for summary disposition . . . , [the trial court's] issuance of a decision, and the filing of an appeal," defendant "is entitled to a final decision that will provide full res judicata effect—that is, that can be used as the basis of issue and claim preclusion." In answering the motion that plaintiffs filed in this Court, defendant stated that it "is entitled to proceed with its meritorious appeal of three tort claims and to a ruling from this Court reversing the trial court decision and to the full law of the case/collateral estoppel effect of any such ruling."

This Court denied plaintiffs' motion to dismiss "for failure to persuade the Court at this time that the appeal is moot." *Milford Hills Props Inc v Charter Twp of Milford*, unpublished order of the Court of Appeals, entered July 1, 2020 (Docket No. 353249).

Having failed to achieve speedy dismissal of the tort claims below, or of the claim of appeal involving them in this Court, plaintiffs do not now offer searching argument in opposition to defendant's claim of governmental tort immunity, but instead tacitly ask this Court to eschew deciding the issue on its merits while explicitly asking this Court to remand this case to the trial court in order that plaintiffs might move the court to allow them to amend their complaint in hopes of salvaging their tort claims. Plaintiffs explain as follows:

> While Appellee could have moved to amend its complaint before or after the denial of summary disposition, Appellee chose not to do so in an effort to proceed to [trial] at once. Now, however, given the delay caused by this appeal, . . . and the lengthy delay resulting from the unforeseeable COVID 19 pandemic, there remains no financial incentive for Appellee to now abandon these claims. Appellee should be given the opportunity to amend its complaint in the interest of justice given the information uncovered during discovery.

We note that plaintiffs on appeal do not expressly disclaim the concession they offered below, and also with an exhibit attached to their motion to dismiss in this Court, that "defendant is likely to prevail under the theory of governmental immunity pertaining to [the tort] claims," but do appear to recognize that they require other avenues in order to maintain those theories of recovery, explaining that they now wish to "add claims and parties," asserting that "[t]here is ample evidence of intentional misconduct, gross negligence, and bad faith dealing on the part of several Appellant's employees and officers, which avoids the doctrine of governmental immunity."

We decline to express any opinions about the propriety or merits of plaintiffs' plans to amend their complaint in furtherance of their tort theories, because there has been no such decision

below for this Court to review.  The issue in this claim of appeal remains whether the trial court erred when it denied defendant's motion for summary disposition of the tort claims insofar as it was predicated on governmental immunity.  We conclude that it did err.

As noted, the trial court denied the parties' cross-motions for summary disposition on the ground that "[t]here are numerous genuine issues of material fact," and did so with no elaboration or differentiation of issues or defenses.  We think it apparent that the court simply overlooked the immunity issue.

Plaintiffs' complaint neither cited the governmental tort liability act nor otherwise mentioned immunity.  Nor did plaintiffs plead facts in connection with its tort theories in terms that clearly implicated one of the statutory exceptions to governmental immunity.[2]  Defendant's answer to the complaint was accompanied by a list of affirmative defenses, in which defendant invoked governmental immunity in connection with the claims of tortious interference and fraudulent or negligent misrepresentation.  In their response to defendant's affirmative defenses, plaintiffs stated in connection with each of defendant's invocations of immunity only that "[t]he allegations contained in [the pertinent paragraph] are denied as untrue for the reasons set forth in Plaintiffs' Complaint."  Those vague denials, at best, are invitations to study the complaint generally while trying to glean from it information that might be applicable to a statutory exception.  We decline the invitation.  See *McIntosh v McIntosh*, 282 Mich App 471, 485; 768 NW2d 325 (2009) ("This Court will not search the record for factual support for a party's claim.").

As noted, defendant filed its first motion for summary disposition on February 15, 2019, which sought dismissal of the tort claims on the basis of governmental immunity.  Proceedings were then stayed in deference to ongoing facilitation.  Plaintiffs did not file their brief in opposition to defendant's motion for summary disposition, and in support of their own motion for partial summary disposition, until December 18, 2019, after the stay had expired, thus 10 months after defendant filed its motion.  In that brief, plaintiffs presented argument relating to contract law, promissory estoppel, takings, and substantive due process, but made no mention of defendant's invocation of governmental immunity in connection with the claims of tortious interference with a business expectancy, or fraudulent or innocent misrepresentation.  Further, plaintiffs cited MCR 2.116(C)(8) (failure to state a claim), (C)(10) (no question of material fact), and (I)(2) (party opposing summary disposition entitled to judgment), but not (C)(7) ("immunity granted by law").

As noted, defendant soon followed with its second motion for summary disposition, which effectively incorporated by reference its earlier one without repeating its particulars, thus including its claim of governmental immunity, and added an alternative request to refer the matter to arbitration.

---

[2] "The statutory exceptions to the governmental immunity provided to the state and its agencies are the highway exception, MCL 691.1402; the motor-vehicle exception, MCL 691.1405; the public-building exception, MCL 691.1406; the proprietary-function exception, MCL 691.1413; the governmental-hospital exception, MCL 691.1407(4); and the sewage-disposal-system-event exception, MCL 691.1417(2) and (3)." *Odom*, 482 Mich at 478 n 62.

The perfunctory hearing on the cross-motions for summary disposition included no discussion of governmental immunity, and the written order that followed did not mention immunity beyond acknowledging in passing that defendants had invoked MCR 2.116(C)(7), along with (C)(8) and (C)(10).

Despite the trial court's failure to indicate whether it offered the issue any serious or distinct consideration, we, in the interests of judicial economy, choose to proceed to decision de novo of the immunity question. We conclude that the trial court erred by failing to recognize defendant's immunity with respect to plaintiffs' tort claims.

Again, the statutory grant of governmental immunity is broad, and exceptions are to be construed narrowly. *Nawrocki*, 463 Mich at 158. And a plaintiff filing suit against a governmental agency must plead in avoidance of governmental immunity. *Odom*, 482 Mich at 478-479. As noted, plaintiffs made no effort to plead in avoidance of governmental immunity below, and even acknowledged in a document submitted to this Court that "defendant is likely to prevail under the theory of governmental immunity." For these reasons, we reverse the result below as regards defendant's claim of appeal, and remand this case to the trial court with instructions to grant defendant summary disposition in connection with plaintiffs' tort claims for tortious interference with prospective economic advantages (Count VII), fraudulent misrepresentation (Count VIII), and innocent misrepresentation (Count IX).

## III. NON-TORT CLAIMS

Defendant argues that the trial court also erred by failing to grant its motion for summary disposition in connection with plaintiffs' non-tort claims.[3] We agree.

When reviewing an order of summary disposition under MCR 2.116(C)(10), this Court examines all documentary evidence in the light most favorable to the nonmoving party to determine whether there exists a genuine issue of material fact. *Ardt v Titan Ins Co*, 233 Mich App 685, 688; 593 NW2d 215 (1999). "A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone." *Smith v Stolberg*, 231 Mich App 256, 258; 586 NW2d 103 (1998). In reviewing a (C)(8) motion, this Court accepts as true all factual allegations supporting the claim "to determine whether the claim is so clearly unenforceable as a matter of law that no factual development could establish the claim and justify recovery." *Id.*

---

[3] Plaintiffs' responsive briefing on appeal includes much advocacy of the merits of their positions below, and concludes by asking this Court to "either grant summary disposition in favor of Plaintiffs-Appellees pursuant to MCR 2.116(I)(2), or remand this matter in its entirety for trial." But as defendant points out, plaintiffs did not file a cross-appeal, and thus are not entitled to ask for any change in the results below. See *ABATE v Pub Serv Comm*, 192 Mich App 19, 24; 480 NW2d 585 (1991) ("an appellee that has not sought to cross appeal cannot obtain a decision more favorable than was rendered by the lower tribunal"). We thus look upon plaintiffs' arguments about the merits of their positions simply as defending the trial court's decision to deny defendant's motion for summary disposition.

## A. CONTRACT

Plaintiffs based their contract claim on language in the parties' capacity agreement calling on defendant to use its best efforts to effectuate the agreement, including expeditiously approving attendant plans, paperwork, and permits. Plaintiffs thus rely on ¶ 3 of the agreement:

> It is agreed that the parties shall cooperate and use their "best efforts" to effectuate the terms and provisions of the Agreement to Assume Responsibility and this Addendum. This includes, but is not limited to, the obligation on the part of the Developer to use its "best efforts" to complete the Community Sewer System and senior citizen portion of the Development in an expeditious fashion. Likewise, [defendant] shall be obligated to use its "best efforts" to expeditiously provide approval of all plans, paperwork, permits or otherwise to effectuate this Agreement and the Agreement to Assume Responsibility. This includes using its best efforts to cooperate with the Oakland County Road Commission or others in the granting of any easements necessary to effectuate the Agreement to Assume Responsibility or this Working/Development Agreement for Operation of Community Sewer System.

This provision says nothing about rezoning, and plaintiffs do not suggest that any part of the capacity agreement expressly addresses that subject.

The reservation of the right to use any excess capacity includes no express or implied guarantee that defendant would take whatever legislative action might be needed to accommodate any plan plaintiffs might devise for taking advantage of their excess capacity. Instead, this agreement called for "best efforts" to effectuate only specified goals—plaintiffs' building a wastewater treatment plant and reserving the rights to use any excess capacity.

Further, defendant cites plausible authority for the proposition that it is doubtful whether an agreement to rezone property or approve a future development plan would have been enforceable, on the ground that a governmental entity may not contract in derogation of its legislative authority. See *Essexville v Carrollton Concrete Mix, Inc*, 259 Mich App 257, 265; 673 NW2d 815 (2003) ("The power to zone and rezone property is a legislative function."); *Harbor Land Co v Grosse Ile Twp*, 22 Mich App 192, 205 n 4; 177 NW2d 176 (1970) ("The true test is whether the contract itself deprives a governing body, or its successor, of a discretion which public policy demands should be left unimpaired." (Quotation marks and citation omitted.)); *Sun Communities v Leroy Twp*, 241 Mich App 665, 669; 617 NW2d 42 (2000) ("it is settled law in Michigan that the zoning and rezoning of property are legislative functions"); *AFT Mich v Michigan*, 303 Mich App 651, 663; 846 NW2d 583 (2014) ("one legislature cannot bind the power of a successive legislature"), aff'd 497 Mich 197 (2015).

Moreover, our Supreme Court has reiterated that "an agreement to agree is not enforceable where the document or contract that the parties agree to make is to contain any material term that is not already agreed on." *LaFontaine Saline, Inc v Chrysler Group, LLC*, 496 Mich 26, 37; 852 NW2d 78 (2014) (quotation marks and citation omitted). In this case, plaintiffs argue that the capacity agreement includes defendant's agreement to agree in the future to new zoning

particulars. However, neither the capacity agreement itself, nor anything else in the record, suggests that the parties had arrived at an understanding.

For these reasons, we conclude that the capacity agreement on its face did not obligate defendant to rezone the subject property to accommodate plaintiffs' development aspirations, and, alternatively, that any such promise would have been unenforceable as an attempt to constrain defendant's future legislative prerogatives. Accordingly, the trial court erred by failing to grant defendant summary disposition of plaintiffs' contract claim.

## B. PROMISSORY ESTOPPEL

The elements of promissory estoppel consist of

(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced reliance or forbearance of that nature, and (4) in circumstances such that the promise must be enforced if injustice is to be avoided. [*Ardt*, 233 Mich App at 692 (quotation marks and citation omitted).]

The doctrine should be applied cautiously, and "only where the facts are unquestionable and the wrong to be prevented undoubted." *Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 687; 599 NW2d 546 (1999).

As the elements plainly indicate, promissory estoppel comes into play in situations that approach, but do not perfectly achieve, contract formation. Accordingly, that doctrine does not operate in controversies arising from a written contract. " 'Promissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove breach of contract.' " *Gen Aviation, Inc v Cessna Aircraft Co*, 915 F2d 1038, 1042 (CA 6, 1990), quoting *Walker v KFC Corp*, 728 F2d 1215, 1220 (CA 9, 1984). See also *Isle Grill Corp v Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003) ("a contract will be implied only if there is no express contract covering the same subject matter") (concerning unjust enrichment).

In this case, the parties disagree over certain terms of their capacity agreement, but do not dispute that it constitutes a legally binding contract between them. Further, plaintiffs do not allege that some alternate set of negotiations, considerations, understandings, or circumstances shadowed those that culminated in the written capacity agreement, let alone that such unwritten machinations constituted an understanding entirely apart from what the capacity agreement covered. It would thus be an incautious extension of the doctrine of promissory estoppel to allow it to impose obligations on defendant apart from the provisions of the parties' written contract. Accordingly, the trial court erred by failing to grant defendant summary disposition of plaintiffs' promissory estoppel claim.

## C. TAKINGS

In their complaint, plaintiffs alleged that defendant, "[b]y failing to approve Plaintiffs' project on the Property, . . . has effected a complete denial of Plaintiffs' reasonable use of the excess capacity" of the wastewater treatment plant, thus "an unconstitutional taking of the excess capacity available at the Plant without due compensation." Plaintiffs additionally alleged that

defendant's "refusal to approve Plaintiffs' request for conditional rezoning has resulted in Plaintiffs being deprived of any viable economical use" of the subject real property.

Both the United States and Michigan Constitutions prohibit the taking of private property for public purposes without due process and just compensation. US Const, Ams V and XIV, § 1; Const 1963, art 1, § 17 and art 10, § 2. " '[T]he Fifth Amendment is violated when land-use regulation 'does not substantially advance legitimate state interests or *denies an owner economically viable use of his land*.' " *Lucas v South Carolina Coastal Council*, 505 US 1003, 1016; 112 S Ct 2886; 120 L Ed 2d 798 (1992) (emphasis added), quoting *Agins v City of Tiburon*, 447 US 255, 260; 100 S Ct 2138; 65 L Ed 2d 106 (1980). In other words, "when the owner of real property has been called upon to sacrifice all economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking." *Lucas*, 505 US at 1019. Accordingly, "total regulatory takings must be compensated." *Id.* at 1026.

In this case, the parties dispute the extent to which defendant's refusal to rezone the subject property has deprived plaintiffs economic value in that property or their right to use any of the wastewater treatment plant's excess capacity, and presumably those were among the "numerous genuine issues of material fact" causing the trial court to decide that summary disposition was not appropriate. Regardless, the court overlooked a purely legal basis for dismissal of the takings claims.

An exception to the requirement that the government compensate a property owner for a regulatory taking is when the regulation at issue simply mirrors a limitation on the use of the land that already existed under applicable property law or nuisance doctrine at the time the property was acquired. *Lucas*, 505 US at 1029-1031. "Where the State seeks to sustain regulation that deprives land of all economically beneficial use, . . . it may resist compensation only if the logically antecedent inquiry into the nature of the owner's estate shows that the proscribed use interests were not part of his title to begin with." *Id.* at 1027.

In this case, plaintiffs argue that, although they "acquired the Subject Property with the knowledge of its current zoning," the parties' capacity agreement induced plaintiffs to expect defendant to "exercise 'best efforts' to expeditiously provide approval of all plans, paperwork, permits or otherwise to effectuate the entire Capacity Agreement, thus giving Appellees a justifiable expectation that a rezoning application would be expeditiously approved." Plaintiffs thus concede that their development ambitions ran afoul of existing zoning. Because "the proscribed use interests were not part of [plaintiffs] title to begin with," plaintiffs' resort to constitutional takings doctrine is without merit. Accordingly, the trial court erred by failing to grant defendant summary disposition of plaintiffs' takings claims.

## D. SUBSTANTIVE DUE PROCESS

In their complaint, plaintiffs alleged that "failing to allow a rezoning that would allow Plaintiffs to use excess capacity that they were compelled by [defendant] to construct is a denial of . . . substantive due process . . . by irrational and arbitrary government action." Plaintiffs elaborated, "In requiring Plaintiffs to construct additional capacity for which there is no user, and which serves no rational purpose, [defendant] has damaged plaintiffs." Plaintiffs additionally alleged that "[f]ailing to allow a rezoning that would allow Plaintiffs to actually develop their

Property is a denial of Plaintiffs' substantive due process rights . . . by irrational and arbitrary government action," elaborating that defendant "has exercised its police power through regulation that illegally prohibits the use of Plaintiffs' Property," and that "[t]he actions and omissions of [defendant] are unreasonable, arbitrary, confiscatory, illegal and unconstitutional."

A person's right to due process of law when facing certain kinds of adverse action at the hands of the state or one of its subdivisions is guaranteed under both the United States and Michigan Constitutions. US Const, Am XIV, § 1; Const 1963, art 1, § 17.[4] "Due process protects vested property rights or entitlements." *Mich Ed Ass'n v State Bd of Ed*, 163 Mich App 92, 98; 414 NW2d 153 (1987). However, the constitutional due-process guarantees extend beyond merely insuring fair procedures in the implementation of governmental policy: "The Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.' " *Zinermon v Burch*, 494 US 113, 125; 110 S Ct 975; 108 L Ed 2d 100 (1990), quoting *Daniels v Williams*, 474 US 327, 331; 106 S Ct 662; 88 L Ed 2d 662 (1986). "[A] claim may be based on a denial of substantive due process where a plaintiff is deprived of property rights by irrational or arbitrary governmental action." *Bevan v Brandon Twp*, 438 Mich 385, 391; 475 NW2d 37 (1991) (quotation marks and citation omitted). A party asserting that governmental action is not a proper exercise of the police power "must prove either that no public purpose is served by the act or that no reasonable relationship exists between the remedy adopted and the public purpose sought to be achieved." *Van Slooten v Larson*, 410 Mich 21, 42-43; 299 NW2d 704 (1980).

The United States Supreme Court has expressed a general reluctance to expand the applicability of substantive due process. It decreed that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Sacramento Co v Lewis*, 523 US 833, 842; 118 S Ct 1708; 140 L Ed 2d 1043 (1998) (alteration retained, quotation marks and citations omitted).

In this case, plaintiffs are arguing that defendant failed to keep promises on which plaintiffs detrimentally relied, thus their contract and promissory estoppel claims. And also, that defendant's refusal to rezone the subject property stripped all value related to their investment-backed expectations concerning excess plant capacity and development of the subject property, thus their takings claims. To the extent that plaintiffs rely on the latter constitutional doctrine, their alternative invocation of substantive due process is inapt. *Id.*

Plaintiffs both assert that "[t]he conduct of [defendant] serves no legitimate governmental purpose," and acknowledge that the existing zoning follows from a desire to maintain a lower density of land usage than what plaintiffs propose, effectively establishing "a park for the benefit of developments adjacent to the Subject Property" in the context of objecting to the frustration of their expectations, not challenging the legitimacy of preserving low-density land uses.

---

[4] Our state constitution's due-process provision is coextensive with that of the United States Constitution. *Cummins v Robinson Twp*, 283 Mich App 677, 700-701; 770 NW2d 421 (2009).

-10-

We further observe that the bulk of plaintiffs' argument under the rubric of substantive due process concerns defendant's action or inaction based on defendant's understanding of the parties' capacity agreement along with defendant's benign policy preferences. In protesting defendant's alleged "breach the Capacity Agreement," and resultant frustration of plaintiffs' "justifiable expectation that a rezoning application would be expeditiously approved," plaintiffs complain of broken promises, not irrational governmental action. And by complaining that defendant "chose to ignore several lucid presentations made by Plaintiffs and the Appellant Township's own Planner's opinions that that there is no market for offices at the Subject Property and that master plan allows for residential development of the Subject Property," plaintiffs are objecting to policy decisions, not seriously attempting to expose irrationality. Indeed, plaintiffs do not specifically assert that the zoning at issue was wholly irrational and thus a violation of substantive due process all along, but instead argue that such a violation came about as the result of defendant's refusal to rezone the subject property as if such action were required by the capacity agreement.

Plaintiffs themselves acknowledge that, "[i]n order to sustain a substantive due process claim, an aggrieved party must have a legitimate claim to entitlement to, or a justifiable expectation in, a property right," citing *G M Engineers & Assoc, Inc v West Bloomfield Twp*, 922 F2d 328 (CA 6, 1990).[5] In that persuasive[6] case, the plaintiff alleged that a municipality's "denial . . . of proposed lot-splits deprived the plaintiff of liberty and property without due process of law and amounted to a taking of property." *Id.* at 329. The federal Sixth Circuit held as follows:

> The viability of plaintiff's due process claim depends upon establishing that the local board did not have discretion to deny the proposed lot-split once the plaintiff complied with the mandatory minimal requirements. If . . . the board members had discretion as to whether or not to approve the proposal, then plaintiff had neither a legitimate claim of entitlement, nor a justifiable expectation, in approval of the proposed lot-split. [*Id.* at 331 (footnote, quotation marks, and citations omitted).]

After setting forth these principles, plaintiffs immediately complain that defendant breached the parties' capacity agreement. Plaintiffs' substantive due process claim, then, is ultimately derived from their contract claim, according to which plaintiffs assert that the parties' capacity agreement left defendant without discretion to deny plaintiffs' requests for rezoning. Because we have already concluded that no such contractual obligation existed, we conclude here that defendant did not lack the discretion to deny the request for rezoning, and thus that rejection of plaintiffs' rezoning request did not provide a factual basis upon which to ground plaintiffs' substantive due process claims.

---

[5] See also *Bevan v Brandon Twp*, 438 Mich 385, 391; 475 NW2d 37 (1991) ("a claim may be based on a denial of substantive due process where a plaintiff is deprived of property rights by irrational or arbitrary governmental action" (quotation marks and citation omitted)).

[6] "Although state courts are bound by the decisions of the United States Supreme Court construing federal law, there is no similar obligation with respect to decisions of the lower federal courts." *Abela v Gen Motors Corp*, 469 Mich 603, 606; 677 NW2d 325 (2004) (citation omitted). The latter may, however, be consulted as persuasive authority. *Id.* at 607.

For these reasons, the trial court erred by failing to grant defendant summary disposition of plaintiffs' substantive due process claims.

## IV. ARBITRATION

Defendant alternatively argues that, if any claims are not dismissed on their merits, the matter should be referred to arbitration to resolve a dispute over the amount of excess capacity. We agree with the trial court that defendant has failed to show that arbitration was in order.

The provision in the parties' capacity agreement covering excess capacity includes the following:

> Should there be a dispute between the parties as to whether there is Excess Capacity for the Developer, the parties shall attempt to work out their differences. Failing resolution, the parties shall have their dispute(s) arbitrated through the American Arbitration Association according to its rules then prevailing. The arbitrator shall be a competent engineer familiar with waste water treatment plants and similar operations. His decision shall be final and binding upon the parties and his award may be enforced in any circuit court or other court having appropriate jurisdiction thereof.

The provision covering amendments includes the following:

> It is understood and agreed that to the extent that the Developer uses Excess Capacity, that the provisions relating to the maintenance and replacement escrow funds may need to be modified to better reflect the proportional costs for the operation, maintenance or replacement of the Community Sewer System. In that event, the parties agree to use their best efforts to negotiate in good faith an amendment that more fully and fairly reflects the proportional costs for operating, maintaining and replacing the Community Sewer System. Should the parties be unable to agree, the matter shall be submitted to arbitration in accordance with the arbitration provision set forth in Paragraph 2 above.

The agreement does not otherwise mention arbitration.

Defendant argues that "the gravamen of [plaintiffs'] claims is that they have been damaged because they cannot use (and be paid for) excess capacity," and thus that "to determine any of their claimed damages under any theory, the amount of excess capacity will need to be determined." According to defendant, "Until the amount of excess capacity is determined under the agreement, the Developers' claims are premature, and the matter should be submitted to arbitration." Plaintiffs, however, assert that defendant waived recourse to arbitration by failing to invoke it in a timely fashion, and also cite exhibits to show that the Department of Environmental Quality, as it was then named, had already determined the extent of the excess capacity, thus obviating any need to resort to arbitration for that determination.

On December 23, 2019, two years after defending this action, defendant, citing the first of the two arbitration provisions quoted above, filed what it styled as its "Second Motion for Summary Disposition to Enforce Arbitration Agreement," asking the trial court to "grant its

Motion and Dismiss Plaintiffs' Complaint in its entirety, or in the alternative dismiss Plaintiffs' Complaint and/or order the parties to arbitration pursuant to the arbitration clause contained in the Capacity Agreement." Defendant thus implied below that an arbitration provision covering only the factual question of the existence of excess capacity broadly covered plaintiffs' contract and constitutional claims. On appeal, however, defendant suggests that arbitration is proper to determine only the existence, or extent, of excess capacity.

This situation seems potentially to raise issues concerning the scope of the arbitration provision, whether it must yield regardless to an administrative agency's independent determination of excess capacity, and whether defendant waived recourse to arbitration for having failed to invoke that provision until two years into the litigation. See *Madison Dist Pub Sch v Myers*, 247 Mich App 583, 596; 637 NW2d 526 (2001) ("waiver of arbitration can occur when a party files a responsive pleading without asserting the right to arbitration"); *Salesin v State Farm Fire & Cas Co*, 229 Mich App 346, 356; 581 NW2d 781 (1998) ("In general, . . . defending an action without seeking to invoke a right to compel arbitration, constitutes a waiver of the right to arbitration.").

The trial court eschewed wading into that thicket. Having stated that "[t]here are numerous genuine issues of material fact and Defendant has not shown that the arbitration agreement should be enforced under the facts presented," the court implied that cutting away to arbitration for inquiry into the extent of excess capacity was premature at that time.

It logically follows that our conclusion that all of plaintiffs' claims are without merit as a matter of law renders the issue of the extent to which the subject wastewater treatment plant has excess capacity moot in connection with those claims. We further conclude that the question of arbitration remains premature until and unless plaintiffs on remand persuade the trial court to allow them to amend their complaint to attempt to revive their tort claims by adding individual parties and new theories in avoidance of governmental immunity. For these reasons, we affirm the trial court insofar as it declared that "Defendant has not shown that the arbitration agreement should be enforced" at this time.

## V. CONCLUSION

For the reasons stated, we affirm the trial court's decision not to surrender this case to arbitration, but reverse the court's decision to deny defendant's motion for summary disposition in connection with each of plaintiffs' claims as pleaded and supported.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Deborah A. Servitto
/s/ Michael J. Kelly

-13-